Deborah J. BAUMAN (77–1459), Evan K. Johnston (77–1460), Plaintiffs-Appellees,

v.

VOLKSWAGENWERK AKTIENGESELLSCHAFT and Volkswagen of America, Inc., Defendants-Appellants.

Nos. 77–1459–60.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 1, 1979.

Decided May 6, 1980.

Rodger B. Kesley, Baker, Worthington, Crossley & Stansberry, Nashville, Tenn., for plaintiffs-appellees in No. 77–1459.

Don C. Stansberry, Jr., Baker, Worthington, Crossley & Stansberry, Huntsville, Tenn., for plaintiffs-appellees in both cases.

Jon D. Ross, James F. Neal, Neal & Harwell, Nashville, Tenn., Michael Hoenig, Herzfeld & Rubin, P. C., New York City, for defendants-appellants in both cases.

Jess Campbell, Banks, Daniel & Campbell, Knoxville, Tenn., for plaintiffs-appellees in No. 77–1460.

Before ENGEL and MERRITT, Circuit Judges, and CECIL, Senior Circuit Judge.

MERRITT, Circuit Judge.

In this diversity case, the defendants appeal from a jury verdict awarded to plaintiffs for injuries suffered in an automobile accident. The case, involving an allegedly defectively designed door latch on a 1971 Volkswagen Karman Ghia, went to the jury on three theories of product liability: (1) negligence, (2) strict liability and (3) breach of implied warranty for a particular purpose. The jury returned a general verdict in favor of plaintiffs awarding $500,000 to Deborah Bauman and $30,000 to Evan Johnston. We reverse the verdict and remand to the District Court for a new trial.

## I.

In July, 1973, Deborah Bauman and Evan Johnston were traveling south on Lantana Road in Cumberland County, Tennessee. Johnston was driving the Karman Ghia, owned by Bauman, at approximately 55 m.p.h. As Johnston approached the intersection of Lantana Road and Brewer Road, he attempted to pass a 1968 Plymouth driven by Charles Blalock. The Plymouth, however, was preparing to turn left into Brewer Road. The Volkswagen overtook the Plymouth as it began turning left and the automobiles collided, side-swiping several times. Because the Volkswagen was traveling faster than the Plymouth, it moved ahead and struck a large fence post. The two cars ended up side by side approximately 18 inches apart with Deborah Bauman, the fence post, and the right door of the Volkswagen underneath the Plymouth. Evan Johnston, the driver, was thrown into the passenger seat of the Karman Ghia.

Deborah Bauman's injuries were extensive. She received a comminuted spiral fracture of the left, upper arm and a transverse fracture of her left thigh bone. She has 10% total disability to the left arm and 25% total impairment to the left leg. She also received a comminuted fracture of the

socket of the right hip joint and hairline fractures to both the left and right pelvis.

Aside from the numerous injuries, Bauman was hospitalized for almost three months. While in the hospital, she developed various complications and suffered serious pain and suffering. Due to the hip injury Bauman's right leg was 1½ inches shorter than the left leg and this necessitated a total hip replacement. The hip replacement left her with 50% total permanent impairment of her right leg. All of her hip injuries resulted in a 26% total permanent disability.

Johnston received fractures of the chin and at the left and right condyles in the joint area of the jaw. He had fractures of the transverse process of the lumbar spine at L–3, L–4 and L–5. Johnston also lost a lower front tooth and received a laceration near his left eye. His left cheek bone was fractured and he sustained a cerebral concussion causing him to be unconscious for several days. Johnston had much discomfort mainly due to his jaw being wired shut for eight weeks.

The major factual question in the case is whether the door on the passenger side of the Karman Ghia came open prematurely before the car hit the fence post. All the other questions in the case arise from this central issue.

Plaintiffs' case is based on the theory that the door latch of the Karman Ghia was defectively designed. It is this design defect, they contend, that caused the door to open during the "moderate" sideswipe collision. Plaintiffs' expert, Dr. John Snider, testified that the right front fender of the Ghia and the left rear fender of the Plymouth collided and that during the sideswipe the cars made contact several times. He described the contact as intermittent with a "bouncing" effect. He also stated that as the result of this contact the right door handle received repeated blows and the blows actuated the door latch allowing the door to open. According to Snider, when the Volkswagen moved ahead of the Plymouth, the door swung open, hit the fence post and was torn from the car. After the door struck the post, the car crashed sideways into the post and Bauman was ejected from the car.

Volkswagen's case is based on the theory that the door of the Volkswagen did not open until the car struck the post and the severity of the crash with the post caused it to open. The theory of its expert, Mr. Derwyn Severy, is that the post hit the right door of the Volkswagen at the A-post where the door connects to the front fender of the car and then "scrubbed" along towards the center of the door. Mr. Severy testified that the impact with the post bent the actuating rod which allowed the door to open. (The actuating rod runs across the door from the A-post to the B-post and is the mechanism which, when released, allows the door to open.)

The jury adopted plaintiffs' theory of the case. Volkswagen assigns twelve errors including an evidentiary ruling by the trial court, jury instructions, excessive damages awarded and error by the Court in not directing a verdict or granting a judgment notwithstanding the verdict for appellants. Although we conclude that the District Court was correct in refusing to direct a verdict, we reverse and remand because we believe the Court made a basic error when it allowed plaintiffs to prove subsequent changes by the manufacturer in the design of the door latch. The admission of this evidence violated Rule 407 of the Federal Rules of Evidence and affected "the substantial rights of the parties" under Rule 61, Federal Rules of Civil Procedure.

## II.

We reverse and remand because the District Court made a basic error in admitting into evidence subsequent changes in design in the door latch of the Volkswagen Karman Ghia. A correct ruling on this question of evidence was crucial because the only evidence from which the jury could infer a design defect was the evidence of a change of design and certain tests or experiments conducted by plaintiffs' expert, the admissibility of which we will discuss below.

Rule 407 of the Federal Rules of Evidence states that subsequent design changes and remedial measures are not admissible to "prove negligence or culpable conduct," but are admissible to show "subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility or precautionary measures, *if controverted*, or [for] impeachment." (Emphasis added.) The Rule rests on a "policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Advisory Committee Note, Rule 407. Its purpose is to permit people to improve their products without running the risk of increasing their liability in the past.

The trial court admitted evidence of the subsequent change in design in the door latch of the Karman Ghia after lengthy objections by Volkswagen. The Court admitted the evidence to show feasibility of an alternative design. It refused to give a limiting instruction that the jury should not consider the changes as any indication of negligence or a defect in the previous design (Tr. Vol. III, pp. 82 & 83). The Court simply instructed the jury as follows:

I want to advise you that this evidence is admitted to be considered by this jury, along with all other evidence, solely as to whether or not there is a feasible alternative in design—that there was a feasible alternative in design. (Tr. Vol. III, p. 83).

The Court overlooked the fact that defendants did not in any way controvert the feasibility of design changes, contesting only the reasons for the subsequent design changes. In order for the evidence to be admissible, Rule 407 requires that feasibility be contested. See *Knight v. Otis Elevator Co.*, 596 F.2d 84 (3d Cir. 1979), (evidence should be excluded because the feasibility of precautionary measures was not controverted). The plaintiffs simply claimed that the design was changed to remedy a defect—a reason the Rule expressly forbids the jury to consider. Volkswagen, however, claimed it subsequently changed the design in order to comply with new government regulations. Thus there was no controversy on the question of feasibility.

Moreover, this kind of evidence is extremely damaging, and in a close case, even if feasibility is controverted, a limiting instruction excluding jury consideration on the issue of negligence was necessary to prevent prejudice. The District Court specifically refused such an instruction. We believe the jury considered the evidence as showing negligence and we must therefore order a new trial.

## III.

■ Volkswagen also contends that the District Court erred in admitting evidence of "hammer tests" conducted by plaintiffs' expert, Dr. Sissom. The hammer tests deal with shock sensitivity. The tests were intended to simulate the side-swipe collision where the door handle of the Karman Ghia made contact with the Plymouth. During the tests Dr. Sissom remained inside the car, his back leaning against the driver's door and his feet pushing on the passenger door. At the same time his assistant hit the outside door handle with a rubber mallet. The results were that in 1971 and 1972 Volkswagens, an average of two blows were required to actuate the door latch and cause the door to open.

In light of the defendants' proof to the contrary, this evidence was far from conclusive on the question of whether the door latch was defectively designed. But we believe it was admissible and was sufficient, although perhaps only barely sufficient, to permit the jury to find that the door latch was defective causing the door to open prematurely when the cars collided.

Rule 702 of the Federal Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." In an uncertain situation such as this, where neither plaintiff remembers the accident and the jury must simply measure probabilities, expert testi-

mony may be valuable. Cases involving product liability or design defect are sometimes difficult to prove because the allegedly defective part is damaged. It is difficult to tell whether the defect caused the accident or the accident caused the defect. Where the part is not patently defective, expert testimony is the only available method to establish defectiveness. *Huddell v. Levin*, 537 F.2d 726, 735, 736 (3d Cir. 1976).

## IV.

■ The major factual disputes which the District Court left for the jury to resolve were:

1. *Liability*—Was there a design defect in the door latch?
2. *Causation*—If so, did the design defect cause the door to open prematurely at the time of the collision between the Karman Ghia and the Plymouth, rather than after the Karman Ghia hit the fence post?
3. *Damage*—If so, what part of the plaintiffs' injuries were "enhanced" or caused by the defect and the premature opening of the door, an event which allegedly allowed Bauman to be ejected from the car and caused injury to Johnston?

Defendants assert that the Court should have directed a verdict on each of these issues and that a directed verdict on any one of these propositions of fact is fatal to the plaintiffs' case. Although the question is a close one, we conclude that the District Judge correctly submitted the case to the jury.

Based on the hammer tests, the testimony of plaintiffs' accident reconstruction experts, Dr. Snider and Dr. Sissom, plaintiff counsel's effective cross-examination of defendant's reconstruction expert, Mr. Severy, and the circumstances of the accident, there was sufficient evidence to conclude that the design of the door latch was defective and that the door came open prematurely upon contact with the Plymouth. The inferences which may be drawn from the facts are conflicting on the liability and the causation issues, and an unbiased jury could adopt the plaintiffs' theory of the case.

Once the jury adopted the plaintiffs' theory on the issues of liability and causation, it might well conclude that all of plaintiffs' major injuries were caused by the premature opening of the door. The defendants' medical expert, Dr. Donald F. Huelke, made a convincing case for the proposition that the door did not open prematurely and that the nature of the injuries suffered by plaintiffs was such that they must have occurred inside the car. The jury rejected this theory, however.

The only substantial proof we can find that Bauman's injuries could have occurred outside the automobile, other than the circumstances of the accident, was plaintiff counsel's effective cross-examination of Dr. Huelke, the defendants' expert. Mr. Stansberry, plaintiffs' counsel, questioned Dr. Huelke as follows:

Mr. Stansberry:

And I take it there is nothing about this localized impact to her hip that is peculiar to a door? It could have been by the front end of the Plymouth, the ground, the post, any blunt, not sharp object capable of transmitting a local blow to the hip, isn't that true?

Dr. Huelke:

No, sir, the kind of pelvis injuries that Miss Bauman sustained in this accident are classical are those from side impact with the door interior.

Mr. Stansberry:

Well, if she had come out of the car and simply landed on something, on her right side, would that not have produced a local impact to the hip?

Dr. Huelke:

Yes, but there would have been other injuries up and down the side of her body which were not recorded in the medical records.

Mr. Stansberry:

Well, would it change then your testimony if she had cuts and abrasions up and down her right side?

Dr. Huelke:

I would have expected her to have them, but, as I say, they did not appear in the medical.

The Court, intervening:

Well, assuming they had been there, would it have changed you mind?

Dr. Huelke:

No, sir, this would have more confirmed my opinion of the interior door as being the causative agent.

From this effective cross-examination of the expert by plaintiffs' counsel and the Court, the jury believing that the door opened prematurely, could reach the conclusion that Bauman's injuries occurred outside the car when she came in contact with the ground or the post or some other object. They could believe that the nature of the injuries was consistent with the theory that they were sustained outside the automobile as a result of the design defect.

■ Where the evidence is sufficient to establish liability and causation, we do not believe we should remove the case from the jury because the precise extent of the injuries caused by the defendant's wrong is uncertain.[1] Damages are often uncertain.[2] They are part of the sanction to be imposed for wrongful conduct, just as is a sentence in a criminal case. We allow the decision-

maker more leeway in such situations. Intuition, compromise and subtle factual distinctions and psychological factors, as well as reason and logic, play a major role in the decision-maker's determination of the sanction to be imposed.[3] The District Court clearly and correctly charged the jury that plaintiff had the burden of persuasion to show that their injuries were the result of defendants' wrong and that they could not award damages for injuries that would have occurred anyway. Plaintiffs persuaded the jury to infer from the facts presented that their major injuries were caused by the premature opening of the door, and we would not be justified in directing a verdict against them on this issue.[4]

We have reviewed the defendants' other, less significant assignments of error on the admission of evidence concerning the use of seat belts, the alleged excessiveness of the verdict, the submission of the case to the jury on the theory of breach of implied warranty of fitness for a particular purpose, collateral estoppel and Bauman's alleged release of Volkswagen, and we find each of these assignments to be without merit. Although we do not find that there was reversible error by the District Court in refusing to submit special interrogatories to

1. *See Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931) (Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.)

2. *See Caiazzo v. Volkswagenwerk, A.G., et al.*, 468 F.Supp. 593 (E.D.N.Y.1979) where, in a second collision case involving the defective door latch of a Volkswagen microbus, the court upheld the jury's verdict against VWAG. Discussing the jury's determination of damages, the Court stated that "[a]n allocation of the kind which the jury made in the present case does not reveal its logic and cannot be pinned to specific items of evidence (p. 598) . . . [n]one of the physiological injury and pain and suffering could be precisely quantified, nor qualified except within very wide limits." (p. 602)

3. *See Caiazzo v. VWAG, supra*, where the court discussed the methods the jury used to make its determinations: "The problem require[s] just the sixth sense, life-experience evaluation that has been traditionally—and gratefully—given over to the judgment of juries. . . . (p. 602) It is in the nature of the jury as an institution that its verdicts must remain inscrutable in cases of the present sort." (p. 598)

4. *See Young v. Reliance Elec. Co.*, 584 S.W.2d 663 (Tenn.App., cert. den. July 30, 1979) (in the case of circumstantial evidence the basic question is whether reasonable minds could differ as to whether the evidence equally supports the inconsistent theories of plaintiff and defendant. If so, then a directed verdict is improper.) *See also Independent Const. Co. v. Mathis*, 79 F.R.D. 18 (E.D.Tenn.1978) (where there was evidentiary support for the jury's verdict for the defendant, as well as evidentiary support for the verdict by the jury for the plaintiff, a directed verdict for either party was unwarranted.)

the jury, our review of the record suggests that they would focus the issues more precisely and may be helpful to the jury in a complicated case such as this one.

Accordingly, the judgment below is reversed and the case is remanded to the District Court for a new trial.