719 P.2d 1070

**Robert READENOUR and Catherine Readenour, husband and wife, Plaintiffs/Appellees,**

v.

**MARION POWER SHOVEL, a DIVISION OF DRESSER INDUSTRIES, INC., a Delaware corporation, Defendant/Appellant.**

**No. 2 CA–CIV 5183.**

Court of Appeals of Arizona, Division 2.

March 13, 1985.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.A. by

Larry L. Smith, Richard McC. Shannon and Jolyon Grant, Phoenix, for plaintiffs/appel-lees.

Fennemore, Craig, von Ammon, Udall & Powers, P.C. by Calvin H. Udall, Ruth V. McGregor, J. Gregory Osborne, Phoenix, for defendant/appellant Dresser Indus-tries, Inc.

## OPINION

HATHAWAY, Judge.

This product liability case arose on July 10, 1981, when plaintiff/appellee Robert Readenour filed suit seeking to recover compensatory damages against appellant for personal injuries received by appellee while working on a power shovel manufac-tured by appellant. The action was brought on the theories of negligence and strict product liability, and appellant assert-ed the affirmative defenses of contributory negligence, assumption of a risk and the statutory defense of product misuse. A.R.S. § 12–683(3). The complaint was amended one month before trial to include a claim for punitive damages. On May 18, 1983, the jury returned verdicts in favor of the appellee, awarding compensatory dam-ages of two million dollars and punitive damages of seven million dollars. On June 7, 1983, appellant filed its motion for judg-ment n.o.v. and motion for new trial, which were denied on July 7, 1983. This appeal followed.

Marion Power Shovel Company was the designer and manufacturer of a power shovel, model 191M, one of which the Ana-max Mining Company ordered in 1966 and which was erected on site in the Anamax copper mine pit located south of Tucson in 1968. The shovel has three large collector rings which are electrical conductors used to transfer electricity within the apparatus. The rings are energized with over 4,000 volts of electricity and are encircled by an eight-inch protective steel skirting or "guard." On December 29, 1979, appellee, a drill and shovel mechanic, was assigned by a supervisor to help service the shovel. During the course of the servicing, appellee

began to remove the collector ring shield with a wrench. He apparently dropped his wrench and in attempting to retrieve it, he made contact with the collector rings and received an electrical shock. He sustained burns and ultimately suffered the loss of his right arm.

Appellant has raised five points for our review: (1) Did the trial court commit prejudicial errors in the admission and rejection of evidence? (2) Were the jury verdicts the result of passion and prejudice and misconduct of the prevailing party? (3) Did the trial court err in charging the jury and in refusing instructions requested? (4) Are the verdicts and judgment unsupported by the evidence and contrary to law? and (5) Was the appellant deprived of a fair trial by irregularities in the proceedings below and by the trial judge's abuse of his discretion?

### ADMISSION OF EVIDENCE

■ Appellant argues that the court erred in admitting the 1978 national electrical code, which was adopted 10 years after the 191M shovel involved in this case was manufactured. The 1978 code contains a requirement that collector rings be properly guarded. However, neither the 1965 nor the 1968 version of the code, in effect when the shovel was manufactured and built, ever mentioned guarding of collector rings. Appellant argues that the prejudicial effect of its admission was magnified when the appellee's witnesses expressed their opinions that the appellant had a duty to modify its products to conform to the subsequently-adopted code. Appellee argues that the code was admissible to establish the "knowledge of the industry" that collector rings should be adequately guarded. Mr. Cannon, an electrical engineer who testified on behalf of the appellee, gave his opinion that if the rings were not adequately guarded, it would be in violation of the basic purpose of the code. However, we

agree with the appellee that his opinion was not strictly based on the 1978 code, but rather he was expressing his opinion on what good electrical practice would be at any time. He also testified that the 1965 and 1978 codes said essentially the same thing in that it was reasonable to protect live parts of electrical equipment against accidental contact. Appellant contends that admission of the code violated A.R.S. § 12–686, which provides:

"In any product liability action, the following shall not be admissible as direct evidence of a defect:

1. Evidence of advancements or changes in the state of the art subsequent to the time the product was first sold by the defendant.

2. Evidence of any change made in the design or methods of manufacturing or testing the product or any similar product subsequent to the time the product was first sold by the defendant."

We do not think § 12–686 is applicable, since the admission of the code was not evidence of changes in the state of the art. In view of the other evidence presented regarding the reasonableness of protecting against contact from electrical equipment, the fact that the machine in question here was "guarded to prevent accidental contact," and since it appears that the 1978 electrical code was a mere codification of what may be deemed to be common sense,[1] we do not believe appellant was prejudiced by the admission of the evidence.

■ At trial, the appellee introduced evidence of the 1974 modification of the 191M collector ring shield. The shovel as manufactured in 1974 contained a lengthened 12 inch collector ring shield, rather than the eight inch collector ring shield present on the 191M manufactured in 1967–68 in this case. Appellee claims the evidence was admissible because it established that appellant knew of the hazard but that it took no steps to warn or assist existing shovel

---

1. The 1978 national electrical code provides at § 710–44:

"The collector ring assemblies on revolving-type machines (shovels, drag-lines, etc.) shall

be guarded to prevent accidental contact with the energized parts by personnel on or off the machine."

owners to resolve the safety problem, thereby demonstrating wanton disregard for the safety of those working on its products. A.R.S. § 12–686 precludes evidence of post-sale changes to prove a defect in a product liability action. While state of the art industry standards offered by appellant would be admissible as a defense under § 12–683, reference would necessarily be to the standards in effect at the time of manufacture, not thereafter. See *Hohlenkamp v. Rheem Manufacturing Company,* 134 Ariz. 208, 655 P.2d 32 (App.1982). Appellee's argument that the modification evidence was only offered for other purposes is not borne out by the record, which shows that the evidence was offered and argued by appellee as direct evidence of a defect. The trial court refused to give appellant's proposed jury instruction number 10, which embodied the rule of A.R.S. § 12–686 and provided:

"In deciding whether the product was defective or not, you may not take into account the fact that the guard was lengthened in 1974. Such changes after the date of original manufacture are not evidence of the existence of a defect."

Equally prejudicial was the trial court's refusal to give appellant's proposed jury instruction number 12:

"In determining whether a product is defective and unreasonably dangerous, you must consider it only as of the time it left the hands of the manufacturer."

See Restatement (Second) of Torts, § 402A (1965).

In *Hallmark v. Allied Products Corporation,* 132 Ariz. 434, 646 P.2d 319 (App. 1982), it was observed that the trial court should insure that evidence is not improperly admitted under a pretext of the "other purpose" exception. The court stated:

"Before evidence of subsequent change may be received as relevant to a proper issue, the trial court must be satisfied that the 'issue on which it is offered is of substantial importance and is actually, and not merely formally in dispute, that the plaintiff cannot establish the fact to be inferred conveniently by other proof,

and consequently that the need for the evidence outweighs the danger of its misuse.'" 132 Ariz. at 439, 646 P.2d 319, quoting McCormick, Evidence, § 275(g) at 668–69 (2nd ed. 1972).

While *Hallmark* concerns a violation of Rule 407, Rules of Evidence, 17A A.R.S., which deals with evidence of repairs subsequent to the date of injury rather than modification evidence under § 12–686, the policy for exclusion or caution in admission would seem to be the same: "By excluding this evidence, defendants are encouraged to make such improvements." 132 Ariz. at 440, 646 P.2d 319.

■ In this case, the appellee did have other ways of proving notice and duty to warn. Indeed, evidence was admitted which was probative on that issue. We think the admission of the subsequent change evidence was prejudicial and requires reversal of the jury's verdict.

■ The trial court admitted into evidence a service report dated May 12, 1969, regarding an incident occurring in Pakistan when a mechanic was attempting to repair a leaking lube line on a 191M shovel. The Pakistani mechanic suffered an electrical shock as a result of his attempt to repair the line. While it is true that evidence of previous accidents tends to prove the existence of a dangerous condition, knowledge or notice of the condition, *Slow Development Company v. Coulter,* 88 Ariz. 122, 353 P.2d 890 (1960), the operative test is that the evidence of the other accident must show that the other accident arose out of a similar situation. Exhibit 167, the report in question, contains the following:

"We almost had a fatality last Thursday. One of our Pakistan mechanics decided to change a leaking lube line on the roller circle while the shovel was waiting for trucks. While disconnecting the end at the injectors, he touched the HV ring. Luckily the current passed through the wrench to the lube injector and ground. It knocked him off the crawler, burned his hand and he got a flash burn in his eyes. Allah surely was with him."

■ The major issue in the instant case was the location and adequacy of the guard surrounding the collector ring. There was nothing in the service report to put appellant on notice about any defect with regard to the shield over the collector ring. There is no suggestion that a change in the collector ring guard be made; indeed, there is no reference to the guard at all in the exhibit, nor any mention of whether the guard was in place on the machine in Pakistan. Since there was nothing to establish sufficient similarity between the two accidents, the exhibit was irrelevant and should not have been admitted.

■ Over appellant's objection, the court admitted four letters relating to alleged comments of employees of England's National Coal Board concerning the guard around collector rings on a 191M shovel in England. Appellant maintains that the letters constituted hearsay. We agree that the letters were admissible to show knowledge and were therefore not subject to exclusion as hearsay. The court allowed appellee's experts to testify that the letters constituted notice and recognition of a hazard. The same reasoning applies to the introduction of the California letter discussing guard requirements around low voltage collector rings.

■ Appellant complains that the trial court improperly admitted Exhibit 1, a model showing the portion of the collector rings, collector ring guard, roller ring circle and two gears. Admission of an exhibit is within the discretion of the trial court. Any argument as to the accuracy of the exhibit was mooted when the jury was permitted a view of the shovel in question.

Appellant's last allegation of error with regard to the trial court's admission of evidence is that it was prejudiced when appellee's witnesses were allowed to testify that appellant's product was defective and that its conduct was outrageous and gross. In *James v. Krpan*, 116 Ariz. 216, 568 P.2d 1114 (App.1977), Division One of this court held that similar testimony in a medical malpractice action invaded the province of the jury and that the trial court acted correctly in striking the testimony. Rule 704, Rules of Evidence, 17A A.R.S., provides that testimony otherwise admissible is not objectionable because it embraces an ultimate issue. In *State v. Williams*, 133 Ariz. 220, 650 P.2d 1202 (1982), our supreme court commented on the application of Rule 704 and quoted the comment to the rule, which states:

" 'Some opinions on ultimate issues will be rejected as failing to meet the requirement that they assist the trier of fact to understand the evidence or to determine a fact in issue. *Witnesses are not permitted as experts on how juries should decide cases.*' " 133 Ariz. at 228, 650 P.2d 1202. (Emphasis added)

Thus, the court concluded that a witness should not indicate his belief in a defendant's suit. Id.

■ Appellant complains that the court allowed Mr. Augspurger to testify that appellant's conduct was outrageous. No objection was made to Mr. Augspurger's expressed opinion. Any objection was therefore waived. *Southern Pacific Transportation Co. v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975). Another complaint is that appellee's witness, Frank Grand, in response to a hypothetical question, stated that it was his opinion that failing to properly guard the high voltage collector rings on 191M shovels was "outrageous conduct." The court interjected that the answer was nonresponsive, the question was reasked and reanswered by Mr. Grand without his expression of opinion as to negligence. No objection was made and any error was cured. Another of appellee's experts, Mr. Adams, testified that appellant's conduct was gross. While it may be unfortunate that the experts used the "buzz words" of the legal system as to the ultimate jury issues, in the absence of objection by appellant, which would have afforded the trial court the opportunity to cure any prejudice, we believe any error was waived. Since a retrial of this case will be necessary, we trust that the incidents will not recur.

## EXCLUSION OF EVIDENCE

Appellant next complains that the trial court erred in excluding evidence of the appellee's safety history and evidence showing violations of applicable state and federal regulations by appellee and his employer. Appellee was allowed to present evidence that he was a "good mechanic." Rule 404 provides that evidence of other acts may be admitted for other purposes, such as proof of intent, plan or absence of mistake or accident. One of the defenses relied upon by appellant was product misuse, with the burden of proving that appellee used the product in a manner and in an activity other than that which was reasonably foreseeable or was contrary to any express and adequate instructions or warnings appearing on or attached to the product, if the injured person knew or should have known of the instructions or warnings. See *O.S. Stapley Company v. Miller,* 103 Ariz. 556, 447 P.2d 248 (1968); *McCarty v. F.C. Kingston Company,* 22 Ariz.App. 17, 522 P.2d 778 (1974). Appellant argues that this evidence was relevant to the defense of product misuse. There was no dispute by appellee, however, that he should not have attempted to remove the guard. Evidence of appellee's general safety history and possible violations of certain regulations was therefore irrelevant.

A new trial with a limitation on the admission of evidence with appropriate limiting instructions given, is necessary. Additionally, we cannot say that the errors in regard to the introduction of evidence did not affect the jury's award of seven million dollars in punitive damages.[2] When inadmissible evidence is used to justify both compensatory and punitive damages, both awards must be set aside. *Life & Casualty Insurance Company of Tennessee v. Padgett,* 241 Ark. 353, 407 S.W.2d 728 (1966). The issues herein on liability and punitive damages are intertwined. Our supreme court has stated:

"... a new trial on the question of damages only will be granted when liability is not contested or it has been clearly proved by the plaintiff that the issues may be deemed separable; on the other hand when liability is contested and the issues are so inextricably entwined that a fair trial could not be given one of the parties on the issue of damages alone that a new trial will be awarded on all issues." *Tovrea Equipment Co. v. Gobby,* 72 Ariz. 38, 42, 230 P.2d 512, 515 (1951).

We rendered a similar decision in *Anderson v. Muniz,* 21 Ariz.App. 25, 515 P.2d 52 (1973). A new trial is mandated here on the issues of both liability and damages.

In view of our disposition, we find it unnecessary to deal with appellant's numerous arguments centering on the alleged insufficiency of evidence to warrant a punitive damage award here. We do, however, need to mention counsel's repeated references in closing argument to appellant's alleged failure to abide by the rules of discovery. During closing argument, trial counsel may submit to the jury any reasonable inference which may be drawn from the facts admitted in evidence. *Pelayo v. Bell,* 13 Ariz.App. 418, 477 P.2d 537 (1970). Here, counsel repeatedly alleged that a "web of deceit" was shown by appellant's deliberate concealment of its answers to interrogatories and the prejudicial effect of this was, we believe, reflected in the damage award. The statements questioned allowed the jury to award damages for abuse of the discovery process when the statements were not pertinent to any *facts* admitted in evidence. Such was error. See *Boone v. Henry,* 151 S.W.2d 323 (Tex.Civ.App.1941).

---

**2.** Appellant's argument that it should not be liable for punitive damages since it acquired Marion Power Shovel Company after the shovel involved here was manufactured is of no moment. We held in *Schmidt v. Financial Resources Corp.,* 140 Ariz. 135, 680 P.2d 845 (App. 1984), that A.R.S. § 10-076 plainly provides that all liabilities and obligations of a merged corporation become the responsibility of the successor corporation and this included punitive damages.

■ The final points which must be addressed are the instructions, since the same arguments are likely to surface on retrial. While a trial judge does not have to instruct the jury on every possible refinement in a given case, the court does have to give an instruction on each legal theory within the issues of the case supported by substantial evidence. *Newman v. Piazza,* 6 Ariz.App. 396, 433 P.2d 47 (1967). The record shows that the trial court refused to consider the case as a product liability case, but rather "more like a construction job rather than just a sale of a product." Appellant was entitled to the instructions in conformance with the post-sale modification limitations of the Arizona statute. As we have already noted, the jury should have been given a limiting instruction that it could not consider the fact that the guard on the shovel was lengthened in 1974. Appellant's instruction number 10 was necessary under A.R.S. § 12–686. The trial court acted correctly in refusing appellant's proposed instructions number 19 and 20, since the concepts were covered when the court instructed the jury:

> "A party who manufactures a product which he has reason to foresee may cause injury from a particular use is required to give an adequate warning of the danger, if the failure to give the warning would make the product defective and unreasonably dangerous. If he fails to do so, he is liable for any injury resulting from the failure to warn which occurs while the product is being used in a reasonably foreseeable manner.
>
> The warning where required must be of such a character that it apprises a user, exercising reasonable care under the circumstances, of the existence and seriousness of the danger sufficient to enable the user to protect himself against it. The duty to warn, where applicable, is a continuing one applying to dangers the manufacturer discovers after sale if such dangers existed at the time of sale."

The instruction is supported by *Rodriguez v. Besser Co.,* 115 Ariz. 454, 565 P.2d 1315 (App.1977), wherein the court stated:

> "The manufacturer of a product must warn of dangers which he knows or

should know are inherent in its use. See Restatement (Second) of Torts, §§ 388, 389, 394 (1965); Annot. 76 A.L.R.2d 9, 16 (1961), Cf. *Witt Ice & Gas Co. v. Bedway,* 72 Ariz. 152, 231 P.2d 952 (1951). This duty may be a continuing one applying to dangers the manufacturer discovers after sale." 115 Ariz. at 459, 565 P.2d at 1320.

■ Appellant argues that the foreseeability instructions numbers 15, 16 and 17, should have been given. These instructions arise from the issue of product misuse, the main thrust of appellant's defense. Product misuse is an absolute defense. Under A.R.S. § 12–683(3), a defendant is not liable if he shows that misuse of the product was· the proximate cause of the incident. Instruction number 15 provides that a manufacturer has no duty to warn of dangers if the purchaser of the product and its supervising personnel are aware of those dangers and of the proper method of use of the product, based on *Jacobson v. Colorado Fuel and Iron Corporation,* 409 F.2d 1263 (9th Cir.1969). There was insufficient evidence to warrant giving that instruction. Number 16 states that a manufacturer is not obliged to anticipate the negligence of another, based on *Mid-Century Insurance Company v. Latimer,* 211 Kan. 810, 508 P.2d 935 (1973), and number 17 states that a manufacturer does not have to foresee the results of a use that violates a statute or regulation. *Corprew v. Geigy Chemical Corporation,* 271 N.C. 485, 157 S.E.2d 98 (1967). These instructions were adequately covered, and it was not error to refuse them.

Appellant's remaining arguments were not preserved for review, because the instructions now being challenged were not objected to in the trial court. *Snethen v. Gomez,* 6 Ariz.App. 366, 432 P.2d 914 (1967). Additionally, we believe the same issues will not recur on retrial and that instructions given in conformance with this opinion will cure any possible errors. ·

Reversed.

BIRDSALL, C.J., and HOWARD, J., concur.