719 P.2d 1058

**Robert READENOUR and Catherine Readenour, husband and wife, Plaintiffs/Appellees,**

v.

**MARION POWER SHOVEL, a DIVISION OF DRESSER INDUSTRIES, INC., a Delaware corporation, Defendant/Appellant.**

No. 18224–PR.

Supreme Court of Arizona.

May 12, 1986.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Larry L. Smith, Richard Shannon, Jolyon Grant, Scott E. Boehm, Phoenix, for plaintiffs/appellees.

Fennemore, Craig, von Ammon, Udall & Powers by Calvin H. Udall, Ruth V. McGregor, J. Gregory Osborne, Phoenix, for defendant/appellant.

Haralson, Kinerk & Morey, P.C. by Dale Haralson, Paul A. Smith, Tucson, for amicus curiae, Ariz. Trial Lawyers Assn.

FELDMAN, Justice

Robert and Catherine Readenour (plaintiffs) petition us to review a decision of the court of appeals which reversed a judg-

ment entered in plaintiffs' favor and against Marion Power Shovel, a division of Dresser Industries, Inc. (defendant). *Readenour v. Marion Power Shovel*, 149 Ariz. 454, 719 P.2d 1070 (App.1985).

We concur in the result reached by the court of appeals but granted review because we disagree with its conclusions concerning the construction and application of A.R.S. § 12–686, which limits the admission of evidence of post-sale modification in a product liability action. Because this is a matter of first impression, we granted review. Rule 23, Ariz.R.Civ.App.P., 17A A.R.S. We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

The facts necessary to resolve the issues on review are few. Mr. Readenour's arm was amputated after an accident in which he came into contact with high voltage conductors on a huge, electrically powered mining shovel manufactured by defendant. The shovel was complex, very expensive and had only a limited market—at the time of trial there were approximately 120 of these shovels in the world. The conductors, known as collector rings, may have been inadequately guarded. The legal issues before us are very narrow and concern only the admission of evidence of the product's design and safety history—primarily that relating to post-sale product changes.

The shovel was designed and manufactured by defendant or its predecessor and was placed in service by plaintiff's employer in 1968. Plaintiff was injured in 1979. Between those dates, defendant had modified the design of the guards to make the collector rings less accessible. It had also provided warning signs for mounting on the guards of shovels previously sold. These signs fit some of the shovels, but not the one on which plaintiff was injured; as a consequence, the sign for that shovel was placed on a different part of the housing, near some electrical cables. At trial, the court allowed plaintiffs to adduce evidence of these post-sale, pre-accident modifications of the product. The court of appeals indicated that evidence of post-sale changes in the size or configuration of the collector ring guard was inadmissible under A.R.S. § 12–686(2) and that as a whole the "admission of the subsequent change evidence was prejudicial and requires reversal." (149 Ariz. at 457, 719 P.2d 1073.)

Plaintiffs argue both that § 12–686(2) is an unconstitutional infringement on this court's rule-making powers and that, if it is constitutional, the statute was inapplicable to the evidence in question. Thus, plaintiffs contend, the evidence of change had either general or limited admissibility. Defendant argues the evidence was at most admissible for limited purposes and that the trial court erred either in admitting the evidence of change or in refusing a requested instruction on its limited use.

## THE ADMISSIBILITY OF EVIDENCE OF CHANGE

### 1. *Statutory Interpretation*

■ The admissibility of evidence of post-sale change is covered by both A.R.S. § 12–686(2)[1] and Rule 407, Ariz.R.Evid., 17A A.R.S.[2] The power to make procedural rules is granted to this court by art. 6, § 5(5) of the Arizona Constitution. Rules of evidence are promulgated under our constitutional grant of power and are ordinari-

---

1. A.R.S. § 12–686 provides:
   In any product liability action, the following shall not be admissible as direct evidence of a defect:
   \* \* \* \* \* \*
   2. Evidence of any change made in the design or methods of manufacturing or testing the product or any similar product subsequent to the time the product was first sold by the defendant.

2. Rule 407 provides:

When, after an event, measures are taken, which if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

ly considered procedural in nature. *State ex rel. Collins v. Seidel,* 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984). The doctrine of separation of powers prevents the legislature from assuming judicial functions. *Id.*

The statute forbids the admission of evidence of post-*sale* changes "as direct evidence of a defect", while Rule 407 [3] forbids the admission and use of post-*injury* remedial measures as "evidence of negligence or culpable conduct." Plaintiffs contend that evidence of the modification was admissible under Rule 407 because the modification was post-sale but pre-injury. Thus, they argue, the statute conflicts with the rule and is void. We have previously held that we will recognize statutory evidentiary rules when they are "reasonable and workable", supplementing rather than contradicting the rules which the court has promulgated. *Seidel,* 142 Ariz. at 591, 691 P.2d at 682.

Does the statute supplement or contradict? It appears to diverge from Rule 407 in two ways. Most importantly, the statute forbids admission of changes as "direct evidence of defect", while the rule forbids admission of such evidence "to prove ... culpable conduct", but permits it if used for any other relevant purpose. Evidence of both post-sale and post-accident product changes is obviously very relevant on a number of issues in a product liability action.[4] We believe that an absolute prohibition against admission of evidence of post-sale change (which, of course, would include post-injury change) would conflict with both the general policy of the Rules of Evidence to admit all relevant evidence (*see* Rule 402) and the specific provisions of Rule 407, which permits some uses. We cannot, therefore, consistent with our rule-making power, view the statute as a complete proscription of evidence of remedial changes in the product.

We have held that it is our duty to save a statute, if possible, by construing it so that it does not violate the constitution. *Arizona Downs v. Arizona Horsemen's Foundation,* 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981). We cannot interpret a statute in such a way as to do violence to the words or the legislature's intent. By using the word "direct" to modify the phrase "evidence of a defect," the legislature obviously intended to allow some uses of such evidence—those that were relevant to proof of matters other than mere existence of a defect. The interpretation which we give to the statute does not torture the words or conflict with the legislature's intent. We believe A.R.S. § 12–686 can be saved if its prohibition against admission as "direct evidence of a defect" is interpreted in the same manner as the prohibition against admission as "evidence of negligence or culpable conduct" of Rule 407. This interpretation is appropriate because, as the court of appeals mentioned, the same policy considerations support both the statute and the rule. (149 Ariz. at 457, 719 P.2d at 1073.)

We turn next to the chronological problem. Rule 407 prohibits admission of evidence of post-injury change; the statute extends the prohibition to include evidence of post-sale change. We do not view this as a conflict between the statute and the rule. First, the policy of the rule was to encourage remedial measures by freeing the defendant from concern that such steps might be used against him as an admission by conduct. McCORMICK, EVIDENCE § 77 at 159 (1954); 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 407[02] at 407–10 (1985). Another impor-

---

**3.** The Rules of Evidence will hereafter be referred to as Rule _____.

**4.** A.R.S. § 12–681(3) provides:

"Product liability action" means any action brought against a manufacturer or seller of a product for damages for bodily injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, sale, use or consumption of any product, the failure to warn or protect against a danger or hazard in the use or misuse of the product or the failure to provide proper instructions for the use or consumption of any product.

The statutory term "product liability action" thus includes actions sounding in negligence, strict liability or breach of warranty.

tant factor to be considered is that although there is an evidentiary basis for such use, the probative value of the evidence is not high; post-accident changes often are motivated by many factors other than consciousness of fault. M. UDALL & J. LIVERMORE, LAW OF EVIDENCE § 87 at 194 (2d ed.1982). The probative value of post-sale, pre-accident changes is obviously more attenuated, especially if not accompanied by evidence of other accidents. Thus, the statutory post-sale, pre-injury bar does not interfere with highly probative evidence.

■ Next, the extension of the prohibition to include pre-accident changes fosters the same policy as that embodied in rule 407. It encourages change which presumably will have the effect of decreasing the danger of future accidents. Finally, the question of remedial changes or measures is not, in our view, either a purely evidentiary or purely procedural question. Rule 407 is found in article 4 of the Rules of Evidence, which deals with "Relevancy and its Limits." The limitation provided by Rule 407 is not based so much upon a lack of relevancy as it is upon the policy decision to promote changes which decrease accidents. Under our constitutional rule-making power we cannot let the legislature define what is relevant; however, when it is appropriate we may defer to legislative decisions regarding the use or exclusion of relevant evidence to promote substantive goals of public policy such as accident prevention. In fact, one commentator suggests that the remedial measure exclusion

is not truly a rule of evidence but one which should be "classified as a [rule] of privilege." McCORMICK, *supra,* § 77 at 159 (1954); *see also* McCORMICK, EVIDENCE § 275 at 668–69 (2d ed. 1972). Privilege statutes prohibit the use of highly relevant evidence in order to further policy goals such as physician-patient confidentiality. We believe A.R.S. § 12–686(2) is similar to a privilege statute, having both procedural and substantive aspects.

■ For the foregoing reasons, we conclude that the extension of the prohibition to include post-sale changes does not conflict with but, rather, supplements the provisions of Rule 407. Therefore, we hold that the statute is to be interpreted as forbidding, in a product liability action, the use of evidence of post-sale, pre-injury modification to prove a "defect" resulting from either negligent conduct or defective product quality. Rule 407 already makes such evidence inadmissible if it concerns post-accident changes.[5] Construing the statute and rule together, whether post-sale or post-accident, design changes or remedial measures are inadmissible except to the extent permitted by Rule 407. So interpreted, we hold that the statute is constitutional.

### 2. *Unreasonable Danger*

■ Assuming constitutionality, plaintiffs argue that the evidence of change they presented did not offend the statute because it did not prove a "defect". They claim it was properly offered only as proof of "unreasonable danger". There is a dif-

---

**5.** Plaintiffs argue that Rule 407 is inapplicable to strict liability actions and applies only to product liability actions which sound in negligence. The authority for and against this position was discussed by our court of appeals in *Hallmark v. Allied Products Company,* 132 Ariz. 434, 440–41, 646 P.2d 319, 325–26 (1982), and *Hohlenkamp v. Rheem Manufacturing Co.,* 134 Ariz. 208, 213–15, 655 P.2d 32, 37–39 (1982). We have not considered the issue. A case for non-application of Rule 407 to at least some strict liability cases is made in *Ault v. International Harvester Company,* 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1975). Other persuasive authority argues that the policy embodied by Rule 407 would be severely undercut by

"theory shopping" if Rule 407 were applied to product liability cases based on negligence but not those based on strict liability. *See Fish v. Georgia-Pacific Corp.,* 779 F.2d 836, 839 (2nd Cir.1985); *Cann v. Ford Motor Co.,* 658 F.2d 54, 60 (2nd Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982); *Werner v. Upjohn Company, Inc.,* 628 F.2d 848, 857–58 (4th Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804. Even if Rule 407 were inapplicable to cases in which strict liability is the only theory presented, plaintiffs' theories in the case at bench included both negligence and strict liability, so that by its terms Rule 407 was applicable to at least a portion of plaintiffs' case.

ference between the two concepts. A defective condition is one which makes the product unsafe for "normal handling and consumption". Restatement (Second) of Torts § 402A (1965), comments g and h. Proof of defective condition alone, however, will not create liability. Strict liability in tort is found only where the defective condition causes the product to be "unreasonably dangerous". *Id.,* comment i; *Byrns v. Riddell, Inc.,* 113 Ariz. 264, 550 P.2d 1065 (1976). We recently rejected a contrary view and reaffirmed *Byrns'* two-prong test for unreasonable danger. *Dart v. Wiebe Manufacturing, Inc.,* 147 Ariz. 242, 244, n. 1, 709 P.2d 876, 878, n. 1 (1985). An unreasonably dangerous product is one which is more dangerous than a consumer would expect or whose risks outweigh its benefits. *Id.*

■ Thus, the admission of evidence of post-sale modifications to prove unreasonable danger is a use which proves culpable product quality. *Werner v. Upjohn Co.,* 628 F.2d 848, 857–58 (4th Cir.1980). This is so because unreasonable danger is the concept which prevents strict liability from becoming absolute liability and is a species of fault. *Dart v. Wiebe, supra; Turner v. Machine Ice Co.,* 138 Ariz. 329, 333, 674 P.2d 883, 887 (App.1983). The fault is in the product, rather than in the conduct of the maker or distributor, but, nonetheless, fault exists. *Caruth v. Mariani,* 10 Ariz. App. 277, 280, 458 P.2d 371, 374 (1969), *modified* 11 Ariz.App. 188, 463 P.2d 83 (1970); *Werner v. Upjohn Co., supra.* Therefore, evidence of change to prove unreasonable danger is limited by both Rule 407 and the statute.

3. *Statutory Application*

Having said as much, we hasten to add that the mere fact that the evidence ulti-

mately may tend to prove culpable conduct or product quality does not render it *ipso facto* inadmissible. Rule 407 "does not require the exclusion of evidence of subsequent measures when offered for another purpose", and under our construction of A.R.S. § 12–686 evidence of remedial measures or post-sale modifications is not "direct" evidence of defect when it is relevant to and offered for other purposes.

■ We believe that under the facts of the case at bench the evidence could have been admitted for a number of other purposes. First, evidence of defendant's provision of twelve-inch collector guards on power shovels sold in Great Britain in 1968, and on all shovels manufactured after 1974, combined with the warnings of danger which defendant received from the British and from its own field representatives,[6] provided strong evidence that defendant had knowledge of the danger posed by the design of the product and of the precautions necessary to correct the problems. M. UDALL, *supra,* § 87 at 194. Since plaintiffs advanced both negligence and strict liability theories of recovery, this knowledge was relevant to the issue of whether the danger from the design of its product was foreseeable to defendant. Foreseeability is, in turn, a factor which plaintiffs must prove in order to prevail on a negligent design theory. *Rossell v. Volkswagen of America,* 147 Ariz. 160, 168–69, 709 P.2d 517, 525–26 (1985).

■ Defendant claims that the only relevant knowledge is that possessed by defendant in or prior to the year of sale. Under the facts of this case we do not agree. Evidence of the design changes was also relevant to show the feasibility of providing proper guards and warnings by

---

**6.** We believe that evidence of the Pakistan incident discussed by the court of appeals (149 Ariz. at 457, 719 P.2d 1073.) would also be admissible for the same purposes. Since the case must be retried, we see no need to discuss the extent of the foundation required, though the court of appeals' requirement for a strict showing of similarity seems overly restrictive considering the use of the evidence. Reasonable men might infer that knowledge of danger from any type of contact

with collector rings is sufficient to inform a manufacturer that there may be some need to better protect workers from contact with such rings. We acknowledge, of course, an appropriate concern for how such evidence may be used by the jury. The means of dealing with that problem are discussed *post* at 450, 719 P.2d, at 1066.

448

retrofitting. Prior to 1966 the guards were only 7¼ inches long but were 4½ inches closer to the roller ring, thus leaving only a two-inch space between the guard and roller ring—too small for an arm to reach in. In 1966 the guard was lengthened to eight inches but was also drawn inward 4½ inches, leaving a 6½-inch space. In 1974 a letter from a field representative warned that this was a dangerous condition. Defendant then lengthened the guard to twelve inches on all new shovels but did not notify owners of existing shovels or retrofit them with the longer guard.[7] In 1978 warning signs (arguably a design change or retrofit, see *Fish v. Georgia-Pacific Corp.*, 779 F.2d 836 (2nd Cir.1985)) were mailed to all shovel owners with instructions to post them on the collector ring guards. However, because the signs were ten by fourteen inches, they could not be posted on the eight-inch guards of shovels manufactured prior to 1974. Thus, the changes in 1974 and 1978 could be offered to show recognition of danger and the feasibility of posting warnings if the proper size sign had been made available.

■ Plaintiffs used this evidence of change properly and effectively. The best example of this can be seen from plaintiffs' closing argument:

> ... we're not saying that in 1968 [defendant] failed to recognize the danger ... that is beside the point. We are saying that if you ever recognize a danger as they [did] later on ... then you have a duty to do something about it. You have a duty to inform those people that have already purchased [the product].

In a case in which the total number of products made and sold was so small, it is certainly permissible for the plaintiffs to argue that if the manufacturer discovered an unreasonably dangerous condition at any time during the product's history it was feasible that it should either retrofit each of the models already sold or warn each of the buyers of the existence of the

latent danger. Evidence of change is both evidence of defendant's knowledge and recognition of the danger and the feasibility of its taking steps to obviate the danger. It is difficult to understand how plaintiffs could prove such a theory without the evidence which the court of appeals held was inadmissible. Such a theory could be argued most effectively when based upon evidence of actual feasibility.

■ Finally, proof of the changes, including the warnings sent to some of the owners of the shovels, was relevant to the punitive damage argument based upon defendant's failure to take safety measures with regard to the particular shovel in question after it discovered the danger and realized what could be done to prevent accidents from occurring. While the evidence casts light on the quality of defendant's conduct, it does not fall within the prohibition of the statute because it is not evidence of a "defect". Again, it is difficult to understand how plaintiffs could prove and argue this theory without relying upon the evidence which the court of appeals held was inadmissible. The large punitive damage award may well be attributable to effective use of the evidence in question.

In light of the foregoing, we believe that evidence of the post-sale changes in this case would have been admissible for many purposes other than direct proof of negligence or culpable product quality. Other uses for the evidence were also possible. *See* Annot. 74 A.L.R.3d 1001 (1976). Admission of the evidence of post-sale changes did not, therefore, violate A.R.S. § 12–686.

## LIMITATIONS ON THE USE OF THE EVIDENCE

### 1. *Limited Admissibility—General Philosophy*

The evidence just discussed had limited use. It was admissible for some purposes, but not for others.

---

7. An Arizona mine did, in fact, lengthen the guard on its own initiative. The evidence is conflicting as to whether Marion was notified or knew of this change.

To exclude the evidence of mixed admissibility entirely in jury cases would hardly be appropriate since its exclusion might well deny the jury access to facts which are essential for reaching a reasonably accurate decision.

1 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 105[2] at 105–11 (1985).

■ This general principle is inapplicable, defendant claims, because plaintiffs offered and argued the remedial measure evidence *only* for the forbidden object of providing direct evidence of "defect". The record does not support this assertion. As indicated *ante* at 447, 719 P.2d at 1063, the evidence was used and argued for various purposes, most of them quite proper. Defendant is incorrect, therefore, in arguing that plaintiffs cannot now try to justify the admission of the evidence by "newly espoused" theories. Even if the proper theories were newly advanced, we would disagree with this argument. A trial court does not err by admitting evidence which is proper for one purpose, even though the party offering it specifies an incorrect purpose. M. UDALL, *supra*, § 87 at 194–95. It is "modern evidentiary theory that as a general rule, evidence should be received if it is admissible for any purpose, notwithstanding the fact that it may be inadmissible for others." 1 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 105 at 105–10 citing 1 WIGMORE, EVIDENCE § 13 (3d ed. 1940); McCORMICK, EVIDENCE § 159 (1954); Rules 401 and 402.

The danger that the jury may improperly consider the evidence or apply it in an improper manner does not in itself provide a reason for exclusion. *Id.*

> Artificial rules of evidence which exclude from the consideration of the jurors matters which men consider in their every day affairs hinder rather than help them at arriving at a just result.

1 J. WEINSTEIN, *supra*, ¶ 105[1] at 105–5, quoting *United States v. 25.406 Acres of Land*, 172 F.2d 990, 995 (4th Cir.), *cert. denied*, 337 U.S. 931, 69 S.Ct. 1496, 93 L.Ed. 1738 (1949). We acknowledge, of course, that this broad policy of admission raises significant pragmatic dangers. The Rules of Evidence do not ignore this; they provide several methods for protecting a party from misuse of evidence which is admissible for some purposes but inadmissible for others.

### 2. *Limited Admissibility—Rule 403*

■ The protection against the danger that the jury may use evidence for an improper purpose is provided by two rules. First, the evidence must pass the threshold of Rule 403, which permits the *trial judge* to exclude relevant evidence where the probative value is "substantially outweighed" by any of a variety of factors, including "danger of unfair prejudice". On this facet of the problem, the court of appeals indicated that plaintiffs had "other ways of proving notice and duty to warn," so that the evidence should not have been admitted. (149 Ariz. at 457, 719 P.2d at 1073.) It cited *Hallmark v. Allied Products Corp.*, 132 Ariz. 434, 646 P.2d 319 (App.1982), for this proposition. *Hallmark* upheld the *trial court's discretionary exclusion* under Rule 403 in a case in which the issue of feasibility was not controverted. Some of the issues upon which the challenged evidence might be used in the case presently before us, however, are of substantial importance and appear to be in controversy. More importantly, however, *Hallmark* properly *upholds the trial judge's exercise of discretion.* It does not stand for the proposition that an appellate court may substitute its judgment for that of the trial court and utilize Rule 403 to exclude evidence after the trial judge has presumably [8] weighed the factors and decided in favor of admissibili-

---

**8.** The record reveals neither formal invocation nor application of Rule 403. It does reveal a great deal of argument to the judge with regard to the alleged prejudicial effect of the evidence in question, with response focused on its relevancy and importance. This record indicates that the balancing process did occur even if the correct labels were not attached. The absence of the proper label is not determinative.

ty. Absent an abuse of discretion, appellate courts should affirm such evidentiary rulings. *State v. Hallman,* 137 Ariz. 31, 34, 668 P.2d 874, 877 (1983).

The conclusion reached on appeal that there were other convenient ways of proving notice and duty to warn, so that the evidence of subsequent modifications was inadmissible (149 Ariz. at 457, 719 P.2d at 1073.) might not be so easily discerned by a trial judge with little time for reflection and no opportunity to study the record. Presumably trial judges also take into consideration counsel's need to present their case as forcibly as possible on the one hand and without undue prejudice to the opposition on the other. Trials cannot be and should not be sterile. In any event, the trial judge in the case at bench did consider the factors appropriate under Rule 403 and made a ruling which followed the general precept of Rule 402 in favor of admission of all relevant evidence. Decisions under Rule 403 involve a balancing process that is truly discretionary with the trial judge. *See City of Phoenix v. Geyler,* 144 Ariz. 323, 328–29, 697 P.2d 1073, 1078–79 (1985). In admitting the evidence in question, the trial judge did not abuse the discretion given him by Rule 403.

3. *Limited Admissibility—Rule 105*

We come, then, to the final issue, which involves the second line of defense erected by the Rules of Evidence to protect a party from the dangers presented by evidence of limited admissibility. This protection is Rule 105, which "represents a compromise" between the general philosophy favoring admission of all relevant evidence

> and the recognition that a jury composed of twelve untrained triers of fact may not, in the absence of some control by the judge ... accurately assess probative value [of the evidence] or confine its use ... to its proper legal scope.

1 J. WEINSTEIN, *supra,* ¶ 105[2] at 105–10. Rule 105 states:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court,
>
> *upon request, shall restrict the evidence to its proper scope* and instruct the jury accordingly.

(Emphasis supplied.)

■ Rule 105 comes into effect after the trial court has exercised its discretion and ruled in favor of admissibility. Rule 105 is mandatory, not discretionary; "once evidence admissible for one purpose but inadmissible for another is admitted, the trial court *cannot refuse* a requested limiting instruction." *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1185 (5th Cir.1982), *vacated on other grounds* 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983) (emphasis supplied); *see also Sprynczynatyk v. General Motors Corporation,* 771 F.2d 1112, 1117 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986) ("... [Rule 105] entitles the opponent to a binding instruction that alerts the jury to the possibility of the forbidden use and tells them not to use it for the purpose."); *Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1334 (8th Cir.1985); *United States v. Regner,* 677 F.2d 754, 757 (9th Cir.1981), *cert. denied,* 459 U.S. 911, 103 S.Ct. 220, 74 L.Ed.2d 175 (1982); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,* 630 F.2d 250, 266 (5th Cir.1980); *United States v. Washington,* 592 F.2d 681 (2nd Cir.1978). This requirement stems from the principle that the "better practice is to admit relevant evidence, relying upon the limiting instructions authorized by this Rule [105], if requested." 1 J. WEINSTEIN, *supra,* ¶ 105[1] at 105–5. Thus, it is error for the court to fail to give the requested limiting instructions. *Chemetron, supra; Sprynczynatyk, supra.*

However, Rule 105 is triggered "only upon request." In the present case, defendant submitted the following as its proposed jury instruction number 10:

> In deciding whether the product was defective or not, you may not take into account the fact that the guard was lengthened in 1974. Such changes after the date of original manufacture are not

proper evidence of the existence of a defect.

By submitting a proposed jury instruction, defendant satisfied the "upon request" element of Rule 105.[9] Plaintiffs contend, however, that defendant's submitted instruction was either incomplete or incorrect, so that the trial judge committed no error in refusing it. Instruction No. 10 is taken almost verbatim from A.R.S. § 12–686. If plaintiffs had wished that the instruction be *in haec verba*, they failed to so state to the trial court.[10]

Their objection was that the instruction was redundant. We do not believe this to be correct. The other instructions did not cover the limited permitted use of evidence of post-sale modification.

■ The instruction offered by defendant did not define the permitted uses of the evidence. However, we do not believe that the incompleteness of the instruction excuses the error. It may not be error to refuse an instruction which fails to state the law completely, *Porterie v. Peters*, 111 Ariz. 452, 532 P.2d 514 (1975), but "[t]his protection against reversal should not be used as a reason for giving no instruction at all," where the purpose of a limited use request is apparent in the context of the trial and the subject to which this request relates is important. 1 J. WEINSTEIN, *supra*, ¶ 105[05] at 105–37. This is especially true where, as here, the evidence was offered and used during trial for some improper purposes such as evidence of "unreasonable danger". Motions in limine were made at the pretrial stage to prevent use of the evidence of change as direct evidence of defect. The issue was clear and obvious from the beginning of trial. In view of the mandatory nature of Rule 105, the judge's refusal to give the instruction was clear error; therefore, we must next determine if the error was prejudicial.

*Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d at 266.

Remedial measures and modifications are elements of safety history which, like the presence or absence of other accidents, are among the few topics which are the subject of special rules of admissibility. *See Jones v. Pak-Mor Manufacturing Co.*, 145 Ariz. 121, 700 P.2d 819, *cert. denied*, —— U.S. ——, 106 S.Ct. 314, 88 L.Ed.2d 295 (1985); Rules 404 to 410. One obvious reason for the care given such matters is that they present a great danger of prejudice if the jury misuses the evidence and takes it as an admission of fault. *Cann v. Ford Motor Co.*, 658 F.2d 54, 60 (2nd Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982), citing to *Bauman v. Volkswagenwerk Aktiengesellschaft*, 621 F.2d 230, 233 (6th Cir.1980) (refusal of limiting instruction prejudicial).

■ We conclude that the refusal of the request for a limiting instruction was prejudicial in this case. The lack of limiting instructions allowed the jury to use evidence of the subsequent increase in guard length and retrofit with warning signs as an admission that the shovel was defective and unreasonably dangerous (a "safety hazard") or that defendant had been negligent in designing it. This result is contrary to A.R.S. § 12–686(2) but would be a natural use of the evidence in the absence of a limiting instruction. Rule 105 was intended to protect against just such a danger. This is not a case in which the jury was given the essence of the correct rule of law so that reversal is inappropriate because of a technical omission in the instruction. *Cf. Petefish by and through Clancy v. Dawe*, 137 Ariz. 570, 577, 672 P.2d 914, 921 (1983). This is, rather, a case in which the jury was not instructed at all with regard to the proper rule of law which governed the use of important evidence. Where the error of law is of a type which

---

**9.** Of course, the limiting instruction is often requested and given at the time of admission of the evidence as well.

**10.** We assume that the word used by the statute —"direct"—would have been substituted for the

word "proper" contained in the instruction had plaintiff so requested. In any event, we think it would be overly technical to hold the instruction legally insufficient because it used "proper" instead of "direct."

may normally affect the result reached by the jury, we cannot presume it to be harmless error. *Jones v. Munn,* 140 Ariz. 216, 221, 681 P.2d 368, 373 (1984); *State v. Diaz,* 110 Ariz. 32, 35, 514 P.2d 1028, 1031 (1973). *Cf. Grant v. Arizona Public Service Co.,* 133 Ariz. 434, 446, 652 P.2d 507, 519 (1982), where the trial court's ruling on a nonlegal, discretionary determination was upheld.

## CONCLUSION

Thus, reluctant as we are to disturb jury verdicts, *see Grant v. Arizona Public Service Co., supra,* we conclude that prejudicial error occurred in the denial of the limiting instruction. We must, therefore, reverse for a new trial. This disposition makes it unnecessary to consider other issues raised on appeal. The opinion of the court of appeals is modified, the judgment is vacated and the case is remanded for a new trial and proceedings not inconsistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.