**Brandi GAYNOR., Plaintiff,**

v.

**OB/GYN SPECIALISTS, LTD., et al., Defendants.**

**No. Civ.A. 98–0023–H.**

United States District Court, W.D. Virginia, Harrisonburg Division.

May 28, 1999.

James A. Ferguson, Barry J. Nace, Scott C. Speier, Paulson & Nace, Washington, DC, Richard L. Douglas, Douglas & Jenkins, Martinsburg, WV, for Brandi Gaynor, plaintiff.

Cynthia L. Santoni, Jeffrey S. Poretz, Miles & Stockbridge, P.C., McLean, VA, for defendants.

## ORDER

MICHAEL, Senior District Judge.

For the reasons stated in the accompanying memorandum opinion, it is this day

### ADJUDGED AND ORDERED

as follows:

(1) The 22 April 1999 Report and Recommendation of the Magistrate Judge shall be, and it hereby is, adopted in its entirety and defendants' 15 March 1999 motion for summary judgment shall be, and it hereby is, denied.

(2) The 3 May 1999 objection by defendants to the Magistrate Judge's report shall be, and it hereby is, overruled.

(3) The 17 May 1999 request for Rule 11 sanctions by plaintiff shall be, and it hereby is, denied.

The Clerk of the Court is hereby directed to send a certified copy of this order and the accompanying memorandum opinion to all counsel of record and to United States Magistrate Judge B. Waugh Crigler.

## MEMORANDUM OPINION

Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), this court referred the above-captioned case to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition, subject to review by this court. On 22 April 1999, the Magistrate Judge filed his Report and Recommendation ("report"), denying defendants' motion for summary judgment. Defendants filed their objection to the report on 3 May 1999 and plaintiff filed a memorandum in opposition to defendants' objection on 17 May 1999. The objection and opposition having been timely filed, the court

must now undertake *de novo* review of the motion for summary judgment. *See Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir. 1982). After considering the defendants' objection, the supporting memorandum and exhibits, and the plaintiff's response, as well as the rest of the record and the applicable law, the court will overrule defendants' objection and adopt the Magistrate Judge's report in its entirety.

## I.

On March 22, 1979, defendant Frederick Walk, MD ("Walk"), an employee of defendant OB/GYN Specialists, Ltd. ("Specialists") delivered plaintiff Brandi Gaynor ("Gaynor"). Upon delivery, it was noted that Gaynor could not move her right arm and that she had partial facial paralysis. Five days later, Gaynor was discharged with a diagnosis of right brachial plexus paralysis (of the arm) and right facial nerve paralysis, both of which resulted from shoulder dystocia.[1] Specialists and Walk knew that Gaynor's mother had a borderline pelvis, or a small delivery passage. With a borderline pelvis, Gaynor's mother could not accommodate fully a relatively high birth-weight baby, such as Gaynor, who weighed nine pounds, two ounces at birth. Gaynor claims that her birth defects are the direct results of negligent pre-natal care and delivery by defendants.

In bringing her medical malpractice claim, Gaynor contends that her physical handicaps have brought tremendous pain and damage to her personally, physically, emotionally, and financially. For defendant's failure to account completely for Gaynor's birth weight and her mother's borderline pelvis, and the subsequent negligent delivery, Gaynor seeks $5,000,000, plus interest, the costs of this action, and other relief the court deems proper.

## II.

### A. Summary Judgment Standard

According to Fed.R.Civ.P. 56(c), summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Fourth Circuit has explained that summary judgment should not be granted "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy." *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.,* 381 F.2d 245, 249 (4th Cir.1967).

Here, the defendants do not take issue with plaintiff's version of the facts, but argue that they are entitled to judgment as a matter of law because plaintiff's expert is not qualified to testify, and without expert testimony, plaintiff cannot show the necessary elements of a medical malpractice claim.

### B. The Standard Applied

Defendants Walk and Specialists move for summary judgment on the grounds that Gaynor's expert witness does not qualify under the relevant provision of the Virginia Code as it existed in 1979, the year of Gaynor's birth. Although the relevant Code provision has been amended several times since 1979, the defendants contend that the appropriate version to be applied is the one that existed at the time of the allegedly negligent medical treatment, or 1979. Under the 1979 version of the statute, "the standard of care by which the acts or omissions are to be judged shall be that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth ..." Va.Code § 8–923 (enacted March 14, 1977, effective July 1, 1977). Defendants contend that plain-

---

1. Shoulder dystocia is the term used to describe the circumstances arising when an in-

fant's shoulder becomes stuck on the mother's pelvic bone during head-first vaginal delivery.

tiff's witness does not qualify as an expert because he is an out-of-state practitioner and is unfamiliar with the standard of care in Virginia as it existed in 1979. Without anyone to testify to the standard of care, defendants insist that plaintiff's claim must fail.

The Magistrate Judge agreed with plaintiff that the expert qualification provision of the Virginia Code applies as it is today. After amendments in 1979, 1980, 1989, and 1992, the relevant provision now describes more specifically the requirements to qualify as an expert in medical malpractice cases and makes clear that out-of-state practitioners may qualify. While agreeing with defendant that the standard of care itself should apply as it was at the time of Gaynor's birth, the plaintiff and Magistrate Judge analyzed the expert qualification provision as separate and distinct from the requirement that the standard of care apply as it existed at the time the injury occurred. In response to defendants' objection to the Magistrate Judge's recommendation, plaintiff repeats her argument[2] that the expert qualification provisions are procedural, not substantive, and, therefore, are to be applied retroactively. Plaintiff has also argued consistently that the Virginia Supreme Court and the Fourth Circuit have retroactively applied the expert qualification provisions in the Virginia Code, while simultaneously refusing to apply retroactively any changes in the relevant standard of care itself. Therefore, plaintiff claims the Magistrate Judge correctly held that the statute in effect today should determine whether or not plaintiff's expert, Dr. Edelberg, is qualified to testify on the Virginia standard of care.

■ In a medical malpractice case, the plaintiff must be able to establish three elements: the applicable standard of care; that this standard has been violated; and that there is a causal relationship between the violation and the harm complained of. *See Fitzgerald v. Manning*, 679 F.2d 341, 345 (4th Cir.1982). Furthermore, in order to establish the aforementioned three elements and make a *prima facie* case, plaintiff ordinarily has to have an expert witness. *See Raines v. Lutz*, 231 Va. 110, 341 S.E.2d 194, 196 (1986).

■ Although it has long been clear that expert testimony is essential to establishing a *prima facie* case, qualification as an expert witness in Virginia medical malpractice suits has been a subject of evolving law. In *Peck v. Tegtmeyer*, a diversity medical malpractice case, the Federal court ruled that, in keeping with *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), Virginia law, rather than Federal law governs qualification of a standard of care expert in a diversity case. 834 F.Supp. 903, 908–09 (W.D.Va.1992), *aff'd* by 4 F.3d 985 (4th Cir.1993), *cert. denied by* 510 U.S. 1074, 114 S.Ct. 884, 127 L.Ed.2d 79 (1994). Also in *Peck*, while the issue of retroactivity of the expert qualification provisions was not addressed directly, Judge Kiser applied Va.Code § 8.01–581.20 retroactively in determining whether plaintiff's expert witness was qualified. *See id.* at 910 (applying provision as amended in 1992 although medical malpractice allegedly occurred in 1988).

In *Grubb v. Hocker*, as in *Peck*, the court applied the qualification provision retroactively without discussing any argument for or against doing so. 229 Va. 172, 326 S.E.2d 698 (1985) In *Grubb*, the medical incident at issue occurred in 1977, yet the court applied Va.Code § 8.01–581.20 in its 1980 revised form. *See id.* at 701. With this retroactive application, the plaintiff's out-of-state witness was qualified and allowed to testify as an expert witness. *See id.*

Despite the fact that the courts in *Peck* and *Grubb* did not devote any attention to

---

**2.** Neither plaintiff's nor defendants' arguments in response to the Magistrate Judge's report differ significantly from their argu-

ments on the motion for summary judgment which the Magistrate Judge considered.

the question of retroactive applicability of the statute, those decisions both correctly applied the then most recent version of the statute. The lack of attention to the question can be attributed to the simple logic of retroactive application in these circumstances. It simply makes no sense to apply expert qualification provisions that existed at the time of an injury, when an expert usually makes his appearance only after the suit has been brought. In medical malpractice claims such as this one, which arose at least eighteen years after the medical treatment at issue in the claim occurred, the search for an expert and the consideration of what qualifies an expert in Virginia begins long after the time of that medical treatment. Defendant's attempt to explain the lack of attention in *Peck* and *Grubb* to the question of retroactivity as an oversight on the part of those courts does not persuade this court that those courts were mistaken in retroactively applying the expert qualification provision in the Virginia Code.

In its most recent form, the expert qualification provision of the statute says:

> Any physician who is licensed to practice in the state of Virginia shall be presumed to know the statewide standard of care in the specialty or field of medicine in which he is qualified and certified. This presumption shall also apply to any physician who is licensed in some other state of the United States and meets the educational and examination requirements for licensure in Virginia. An expert witness who is familiar with the statewide standard of care shall not have his testimony excluded on the ground that he does not practice in this Commonwealth. A witness shall be qualified to testify as an expert on the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the al-

leged act or omission forming the basis of the action.

Va.Code § 8.01–581.20. Previous iterations of this provision of the Code did not contain the presumption that physicians licensed in states other than Virginia who meet the licensure requirements in Virginia can have their testimony accepted as readily as Virginia-licensed physicians. The version existing today is the result of evolution through amendments in 1979, 1980, 1989, and 1992.

The Code itself suggests one reason why the current version of the expert qualification provision applies. According to the Virginia Code, code provisions in Title 8.01 apply retroactively unless they affect substantive rights. As stated at the beginning of that Title:

> Except as may be otherwise provided in § 8.01–256 of Chapter 4 (§ 8.01–228 et seq.) (Limitations of Actions), all provisions of this title shall apply to causes of action which arose prior to the effective date of any such provisions; provided, however, that the applicable law in effect on the day before the effective date of the particular provisions shall apply if in the opinion of the court any particular provision (I) may materially change the substantive rights of a party (as distinguished from the procedural aspects of the remedy) or (ii) may cause the miscarriage of justice. (Code 1950, § 8–2; 1977, c. 617.)

Va.Code § 8.01–1.

■ Defendants confuse the retroactive applicability of the standard of care itself with the retroactive applicability of other aspects of the standard of care statute, which are purely procedural in nature. While it is true that the question of what the applicable standard of care should be is answered by referring back to the existing standard of care at the time the medical malpractice allegedly occurred, the court should not refer back to the earlier version of provisions of the statute which are procedural rather than substantive. For example, this court has previously

held that although the exemption statute (which is also part of the medical malpractice section of the Virginia Code) does apply retroactively, the standard of care does not apply retroactively. *See Chapman v. Edgerton,* 529 F.Supp. 519, 520 (W.D.Va.1982) (distinguishing the case at bar from *Fletcher v. Tarasidis,* 219 Va. 658, 250 S.E.2d 739 (1979), in which the exemption statute was determined to be procedural and therefore retroactively applicable).

The court must dismiss defendants' arguments that the expert qualification provisions are intimately bound up with the standard of care itself and that the *Erie* analysis in *Peck* mandates applying the expert qualification provision as it stood in 1979. First, defendants make the completely unsupported assertion that if provisions are too intertwined to be extricated under an *Erie* analysis, they must also be viewed as inextricable under the Virginia Code analysis of retroactivity. The Virginia Code itself provides the guidance the court needs for determining whether a provision is substantive or procedural, and thereby, whether it should be applied retroactively or not. There is no reason the court should accept defendants' suggestion to graft the *Erie* analysis onto the guidance provided in the Virginia Code. Second, the provision at issue here is captioned in a manner that suggests it consists of several distinct parts: "Standard of care in proceeding before medical malpractice review panel; expert testimony; determination of standard in action for damages." Va.Code § 8.01–581.20. Viewing the expert testimony portion of that statute as clearly and distinctly procedural in no way detracts from the holding in *Peck* or the rule that the applicable standard of care is that practiced by a reasonably prudent practitioner in the field at the time the medical treatment at issue was given.

■ Whether a particular provision applies retroactively depends on whether it is procedural or substantive in nature. Pro-

visions are procedural in nature if they "control only the method of obtaining redress or enforcement of rights and do not involve creation of duties, rights, and obligations." *Harris v. DiMattina,* 250 Va. 306, 462 S.E.2d 338, 340 (1995). A particular code provision need not contain a clearly expressed legislative intent that it be applied retroactively in order for the court to presume that it does have retroactive effect. *See id.* at 340–41. If a Code provision is procedural in nature, the version of that Code provision that exists on the day proceedings are conducted is the version which applies to the case. *See id.* at 341.

The exceptions to the presumption that procedural provisions apply retroactively are limited and do not apply here. If the application of a particular provision will "materially change the substantive rights of a party" or if that application "may cause the miscarriage of justice," the Court may apply the version of the Code in existence prior to the most recent amendments. Va.Code. § 8.01–1. Thus, even applying either of these exceptions would not compel the court to look all the way back to 1979 to find the applicable version of the Code. However, because neither of these exceptions, which relate once again to the question of whether the provision is procedural or substantive in nature, applies here, the court can only conclude that the expert qualification provision is procedural and not substantive.

Retroactive application of the provisions of the Virginia Code concerning qualification of experts in medical malpractice cases does not change any substantive rights of the parties nor does it cause any miscarriage of justice. No right to exclude plaintiff's expert accrues at the moment a doctor or other medical professional commits malpractice. And provisions regarding the qualification of expert witnesses certainly are more logically regarded as affecting the method of obtaining redress and not the creation of duties, rights, and obligations. The exceptions to the presumption of retroactivity—and the miscar-

riage of justice exception in particular—lend greater support to plaintiff's position than to defendants' position. In this case the miscarriage of justice would occur if the statute were *not* applied retroactively because plaintiff would be deprived of the testimony of an expert who is, by all available indicators, qualified.[3]

■ Analyzing Dr. Edelberg's qualifications under the most recent form of Virginia Code Section 8.01–581.20, the court finds that the Magistrate Judge's finding that Dr. Edelberg is qualified was not clearly erroneous or contrary to law.[4] Dr. Edelberg is licensed to practice in Maryland, making him a licensed physician in the U.S. Dr. Edelberg meets the educational requirements for licensure in Virginia. Dr. Edelberg has demonstrated that he possesses expert knowledge in defendant's specialty, obstetrics and gynecology, and familiarity with what conforms or fails to conform to standards in that field. Finally, Dr. Edelberg was an active practitioner within one year of the date of plaintiff's delivery, and was involved at that time in the active clinical practice of obstetrics and gynecology. The fact that Dr. Edelberg has testified as an expert on the standard of care in at least three other Virginia cases, upon which the Magistrate Judge placed particular reliance, also demonstrates that he should be qualified as an expert to testify in this case.

■ In their objection, the defendants rely only on Dr. Edelberg's deposition testimony to make their case against his qualification. They assert that Dr. Edelberg's affidavit, submitted in support of plaintiff's opposition to the motion for summary judgment, should not be considered by this court. In support of that assertion, defendants cite *Callas v. Trane CAC, Inc.*, 776 F.Supp. 1117 (W.D.Va.1990), *aff'd by* 940 F.2d 651 (4th Cir.1991).

Despite the imperfections of Dr. Edelberg's memory at his deposition, this court will judge his qualifications as an expert based on all the evidence in the record, including his affidavit submitted in opposition to defendants' motion for summary judgment. Affidavits, such as that of Dr. Edelberg, submitted in opposition to a motion for summary judgment, are entirely permitted and, in some instances, crucially necessary to the court's determination of a motion for summary judgment. *See* Fed. R.Civ.P. 56(e). This court's decision in *Callas* is completely inapposite to the circumstances surrounding the submission of Dr. Edelberg's affidavit in this case. In *Callas*, this court granted plaintiffs' motion to strike an affidavit, submitted after the magistrate had filed his report, and containing the statements of an additional witness who was not listed in answer to interrogatories, and who defendants had stated would not testify as an expert. *See Callas*, 776 F.Supp. at 1119. The court noted that it had discretion under Rule 72(b) of the Federal Rules of Civil Procedure to receive additional evidence as part of its *de novo* review of the magistrate's report. *See id.* But the court declined to accept the affidavit because it could have been filed before the magistrate's hearing and defendants provided no reason for failing to submit it prior to filing objections to the magistrate's report. *See id.* The court also found that the expert opinions stated in the affidavit were inappropriately of-

---

3. The court agrees with plaintiff's suggestion in her response to defendant's objection, that, were the court to find that plaintiff's expert cannot qualify under the relevant Virginia Code provision, it would be in the interests of justice and fairness to allow plaintiff leave to seek a different expert, not to grant summary judgment to defendant on the basis of their expert's failure to qualify when it was reasonable for them to believe that, having previously qualified as an expert in Virginia courts, he would qualify in this court applying Virginia law.

4. As distinct from the Magistrate's recommendation that summary judgment be denied to defendants, the finding that plaintiff's expert is qualified to testify is not subject to *de novo* review, but is subject to reversal only if clearly erroneous or contrary to law. *See, e.g., Peck*, 834 F.Supp. at 905.

fered by a witness who had not been offered as an expert witness. *See id.*

In this case, counsel for plaintiff filed the Edelberg affidavit within a reasonable time after discovering that defendants' strategy would be to attempt to win summary judgment by excluding her expert witness. Plaintiff did not intentionally or in bad faith hold back information about Dr. Edelberg's qualifications. Rather, at the time of his deposition, Dr. Edelberg could not remember the names or details of the Virginia cases where he had previously been qualified as an expert. When that memory lapse became a focal point for defendants critique of Dr. Edelberg's qualifications in their motion for summary judgment, plaintiff acted promptly to cure that lapse through the affidavit and other exhibits filed in opposition to the motion for summary judgment. Therefore, the Magistrate Judge properly considered the affidavit and other information filed to supplement the evidence of Dr. Edelberg's qualifications. This court likewise considers the affidavit and supplemental information to properly form part of the record in this case.[5]

### III.

The provisions in the Virginia Code concerning expert qualification can be applied retroactively because they are procedural and do not affect the substantive rights of the parties involved. Under the current version of the Code, plaintiff's witness, Dr. Edelberg, clearly meets the qualifications necessary to testify as an expert on the standard of care applicable in this case. Because defendants' only argument for granting summary judgment was the lack of qualification of plaintiff's expert, no valid basis for granting summary judgment has been presented and the summary judgment motion shall be denied, as recommended by the Magistrate Judge's report.

The court will also deny plaintiff's request for Rule 11 sanctions. The court finds that while defendants' arguments are without merit, defendants have not failed to meet the requirement in Rule 11(b)(2) of the Federal Rules of Civil Procedure that legal contentions must be warranted by existing law or by a nonfrivolous argument for the modification of existing law. The court is not aware of any cases which purposefully addressed the issue raised by defendants of whether the expert qualification provision in the Virginia Code applies retroactively. In all the cases on point which are known to the court, the expert qualification provision was applied retroactively, but the courts in those cases seem to have done so simply as a matter of course and without elaborating on their grounds for retroactive application. This court finds after applying the guidance of the Virginia Code on retroactivity, that the outcome is clear. However, defendants' contentions can be construed as warranted by a nonfrivolous argument because no court had explicitly ruled on the issue before. Furthermore, defendants acted within their rights in objecting to the Magistrate Judge's report, even if they simply repeated all the arguments raised in their motion for summary judgment which had already been considered by the Magistrate Judge. The statute authorizing referral to the Magistrate Judge, and the relevant rule of Civil Procedure, clearly provide for the filing of objections and contain no restrictions on the nature of the arguments those objections may raise. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b).

An appropriate order this day shall issue.

---

**5.** The court would also note that were it to accept defendants' gloss of the *Callas* holding, the numerous exhibits filed by defendants in support of their objection to the magistrate judge's report and recommendation should also be stricken from the record in this case.