195 P.3d 200

**Laura SEISINGER, Plaintiff/Appellant,**

v.

**Scott SIEBEL, M.D., Defendant/Appellee.**

No. 1 CA–CV 07–0266.

Court of Appeals of Arizona, Division 1, Department E.

June 17, 2008.

Review Granted Oct. 28, 2008.

James J. Syme, Jr., Goodyear, Attorney for Plaintiff/Appellant.

Jones Skelton & Hochuli PLC By J. Russell Skelton, Douglas R. Cullins, Eileen Dennis GilBride, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

IRVINE, Presiding Judge.

¶ 1 In this appeal, we determine the constitutionality of Arizona Revised Statutes

("A.R.S.") section 12–2604(A) (Supp.2007) under the separation of powers clause of the Arizona Constitution. Section 12–2604 governs the qualifications necessary for expert witnesses in medical malpractice actions. Laura Seisinger ("Seisinger") contends that § 12–2604(A) is unconstitutional because it violates the doctrine of separation of powers. She argues that § 12–2604(A) is in direct conflict with Rule 702 of the Arizona Rules of Evidence. For the following reasons, we hold that § 12–2604(A) is unconstitutional because it violates the separation of powers provision of the Arizona Constitution. We find that § 12–2604(A) sets stricter limits than Rule 702 on qualifications for an expert witness in medical malpractice cases and thus is in direct conflict with Rule 702. Therefore, we reverse the trial court's judgment and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In August 2004, Seisinger filed a complaint against Scott Siebel, M.D. ("Dr.Siebel"), alleging that Dr. Siebel committed medical malpractice when he administered a spinal epidural to Seisinger. Thereafter, Seisinger disclosed Dr. J. Antonio Aldrete, M.D., as an expert witness who would testify based upon his exam of Seisinger and his review of her medical records.

¶ 3 Prior to trial, Dr. Siebel moved in limine to preclude Dr. Aldrete's testimony because he did not meet the requirements of § 12–2604, governing the qualifications necessary for expert witnesses in medical malpractice actions. Seisinger did not dispute that Dr. Aldrete could not satisfy the requirements set forth in § 12–2604. Instead, she argued that § 12–2604(A) is an unconstitutional violation of the separation of powers doctrine because it is in direct conflict with Rule 702 and asked the trial court to declare it unconstitutional. The trial court granted Dr. Siebel's motion, ruling that § 12–2604 does not violate the separation of powers doctrine or detract from the court's ability to apply Rule 702.

¶ 4 The trial court granted Seisinger an extension of time to disclose a new expert witness. When Seisinger failed to disclose a new expert, the court granted Dr. Siebel's motion to dismiss. Seisinger timely appealed the judgment. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## ISSUE

¶ 5 Is A.R.S. § 12–2604(A) unconstitutional under the separation of powers doctrine because it conflicts with Rule 702? [1]

## DISCUSSION

¶ 6 This court reviews challenges to a statute's constitutionality de novo. *Bertleson v. Sacks Tierney, P.A.*, 204 Ariz. 124, 126, ¶ 6, 60 P.3d 703, 705 (App.2002). We presume a statute is constitutional and will not declare it unconstitutional unless we are "satisfied beyond a reasonable doubt" that it conflicts with the federal or state constitution. *Chevron Chem. Co. v. Superior Court,* 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982). We therefore resolve all uncertainties in favor of constitutionality. *State v. Gilfillan,* 196 Ariz. 396, 401–02, 998 P.2d 1069, 1074–75 (App.2000).

¶ 7 The Arizona Constitution requires the three main branches of government, legislative, executive and judicial, to remain "separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others." Ariz. Const. art. 3. As we have recognized, however, the separation of powers doctrine does not require absolute compartmentalization of the branches. *J.W. Hancock Enters., Inc. v. Ariz. State Registrar of Contractors,* 142 Ariz. 400, 404, 690 P.2d 119, 123 (App. 1984). Rather, "[t]he mandate of the doctrine is to protect one branch against the overreaching of any other branch." *State v. Prentiss,* 163 Ariz. 81, 84–85, 786 P.2d 932, 935–36 (1990). Thus, a legislative enactment violates article 3 only when it " 'unreasonably limits or hampers' the judicial system in performing its function." *Id.* at 84, 786 P.2d at

1. Because the issue before us is the constitutionality of a state statute, we ordered notice be given to the Attorney General, Speaker of the House, and President of the Senate pursuant to A.R.S. § 12–1841 (Supp.2007). None of these officials have sought to be heard in this proceeding.

935 (quoting *United States v. Superior Court*, 144 Ariz. 265, 278, 697 P.2d 658, 671 (1985)).

▮▮▮▮ ¶ 8 The constitution confers on the Arizona Supreme Court the "[p]ower to make rules relative to all procedural matters in any court." Ariz. Const. art. 6, § 5(5). The supreme court has held that its rule-making power is exclusive and may not be infringed by the legislature. *State v. Blazak*, 105 Ariz. 216, 217, 462 P.2d 84, 85 (1969); *Ariz. Podiatry Ass'n v. Dir. of Ins.*, 101 Ariz. 544, 549, 422 P.2d 108, 113 (1966) (stating constitutionally granted rule-making power may not be limited by legislative enactment). Accordingly, the judiciary will recognize legislatively enacted procedural rules only if they are "reasonable and workable" and do not conflict with, or tend to engulf, the rules promulgated by the supreme court. *State ex rel. Collins v. Seidel*, 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984) (quoting *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778, 779 (1973)). A statute that supplements, rather than conflicts with, the court's evidentiary rules will not be considered an unconstitutional infringement of the court's rule-making power. *Id.*

▮▮▮▮ ¶ 9 The Arizona Rules of Evidence address admission of "Opinions and Expert Testimony." Ariz.R.Evid. 701 to 706. Admission of Dr. Aldrete's testimony regarding Dr. Seibel's alleged violation of the applicable standard of care would be governed by Rule 702, which reads:

*Testimony by Experts*

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Arizona courts have held that an expert witness need not be of the same specialty as the defendant in a medical malpractice action to be competent to testify regarding the standard of care. *See, e.g., Barrett v. Samaritan*

Health Servs., Inc., 153 Ariz. 138, 141, 735 P.2d 460, 463 (App.1987). Rather, a witness may testify based upon his or her "education, experience, observation or association with that specialty." *Taylor v. DiRico*, 124 Ariz. 513, 518, 606 P.2d 3, 8 (1980). Thus, "[i]t is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of admissibility." *Gaston v. Hunter*, 121 Ariz. 33, 53, 588 P.2d 326, 346 (App.1978) (quoting *Fitzmaurice v. Flynn*, 167 Conn. 609, 356 A.2d 887, 892 (1975)).

¶ 10 Section 12–2604(A) [2] provides additional expert witness qualifications in medical malpractice actions:

In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and the person meets the following criteria:

1. If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty or claimed specialty as the party against whom or on whose behalf the testimony is offered. If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist who is board certified, the expert witness shall be a specialist who is board certified in that specialty or claimed specialty.

2. During the year immediately preceding the occurrence giving rise to the lawsuit, devoted a majority of the person's professional time to either or both of the following:
   (a) The active clinical practice of the same health profession as the defendant and, if the defendant is or claims to be a specialist, in the same specialty or claimed specialty.
   (b) The instruction of students in an accredited health professional school or accredited residency or clinical re-

---

**2.** Seisinger makes a general argument that § 12–2604 is unconstitutional, but her argument relates only to the provisions of subsection (A).

Therefore, our ruling is limited to the constitutionality of § 12–2604(A).

search program in the same health profession as the defendant and, if the defendant is or claims to be a specialist, in an accredited health professional school or accredited residency or clinical research program in the same specialty or claimed specialty.

3. If the defendant is a general practitioner, the witness has devoted a majority of the witness's professional time in the year preceding the occurrence giving rise to the lawsuit to either or both of the following:

   (a) Active clinical practice as a general practitioner.

   (b) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession as the defendant.

(emphasis added).

¶ 11 Seisinger contends that § 12–2604(A) unconstitutionally infringes on the supreme court's powers to make procedural rules and conflicts with Rule 702 because it sets forth additional requirements for expert witnesses in medical malpractice cases. Dr. Siebel responds that the statute merely supplements Rule 702 by further defining expert witness qualifications in medical malpractice cases.

¶ 12 The supreme court discussed the circumstances under which a statute supplants a court rule in *Barsema v. Susong*, 156 Ariz. 309, 751 P.2d 969 (1988). In that case, the plaintiffs appealed a jury verdict in favor of defendant on plaintiffs' medical malpractice claim. *Id.* at 311, 751 P.2d at 971. The plaintiffs argued that the trial court had erred in prohibiting them from cross-examining defendant's expert witness regarding his employment relationship with defendant's insurer, Mutual Insurance Company of Arizona ("MICA"). *Id.* They argued that the statute relied upon by the trial court, which prohibited admission of evidence that any witness had any relationship with a health care insurer for any purpose, was unconstitutional. *Id.*

at 311–12, 751 P.2d at 971–72. In analyzing the constitutionality of the statute, the supreme court noted that, contrary to the statute, Rule 411 of the Arizona Rules of Evidence did not require exclusion of evidence of insurance when offered for another purpose, such as proof of bias or prejudice of a witness. *Id.* at 313, 751 P.2d at 973. Although the rules of evidence allow a trial court to admit evidence of insurance not offered on the issue of liability or damages after determining its relevancy and weighing its probative value against the danger of undue prejudice, the statute prohibited the admission of such evidence in all medical malpractice cases. *Id.* at 314, 751 P.2d at 974. Consequently, the court found that the statute provided an analytical framework contrary to the rules of evidence and held that it violated the separation of powers doctrine. *Id.*

¶ 13 We read *Barsema* to require the same result here. Rule 702 authorizes expert testimony on the basis of "knowledge, skill, experience, training, or education." In contrast, § 12–2604(A) precludes a witness who is otherwise qualified under Rule 702 from testifying in a medical malpractice case unless he or she meets the additional criteria set forth in the statute. Thus, a witness qualified under Rule 702 may nevertheless be excluded by the statute's strict practice or teaching requirements.[3] The statute is therefore in direct conflict with Rule 702. *Cf. McDougall v. Schanz*, 461 Mich. 15, 597 N.W.2d 148, 153–54, 159 (1999) (finding that a statute similar to § 12–2604 conflicted with Michigan Rule of Evidence 702 on expert testimony, but ultimately holding the statute is an enactment of substantive law and did not infringe on the court's constitutional authority to enact rules governing practice and procedure).

¶ 14 Dr. Siebel argues that § 12–2604(A) does not flatly contradict the Arizona Rules of Evidence, but instead supplements the rules by further defining the type of knowledge, skill, experience, training or education that is appropriate for an expert witness

---

**3.** We recognize that the statute provides that it does not limit the power of the trial court to *disqualify* an expert witness on grounds other than the qualifications set forth under this sec-

tion. A.R.S. § 12–2604(C). The statute, however, contains no similar provision to allow testimony if the witness is otherwise qualified under Rule 702 but does not meet the statutory criteria.

testifying in a medical malpractice case. One of the principal cases Dr. Siebel relies upon for this proposition is *Seidel*, in which the State charged defendant Deason with driving under the influence of intoxicating liquor. 142 Ariz. at 588, 691 P.2d at 679. The State administered an intoxilyzer test to Deason that revealed his blood alcohol level was under the legal limit. *Id.* at 588–89 n. 1–2, 691 P.2d at 679–80 n. 1–2. At trial, the State notified the defense that it would not seek admission of the intoxilyzer results and moved in limine to exclude the results unless the defendant established that the State had complied with the statutory requirements for admission of the evidence. *Id.* at 589, 691 P.2d at 680. The relevant statute provided for admission of intoxilyzer results at trial when the State followed the procedural steps specified by the statute. *Id.* Deason was unable to show that the State administered the intoxilyzer test in accordance with the statutory requirements and the State sought to preclude the admission of the evidence. *Id.*

¶ 15 The supreme court considered whether the statute was an unconstitutional statutory rule that contradicted the procedures adopted by the Arizona Rules of Evidence. *Id.* at 590–91, 691 P.2d at 681–82. The court determined that the legislature enacted the statute to devise an easier way to admit intoxilyzer evidence at trial and that the statute, in essence, eliminated the need for expert testimony to establish the accuracy and reliability of the intoxilyzer results when the procedural requirements of the statute were met. *Id.* at 591, 691 P.2d at 682. The statute allowed admission of "essentially scientific or technical opinion evidence without the necessity of 'a witness qualified as an expert' as required by Rule 702 and cases construing the rule." *Id.* at 590, 691 P.2d at 681 (quoting *Alexander*, 507 P.2d at 779). The court ruled that this statutory method for admission of intoxilyzer evidence was not the exclusive method of admission of such

evidence, but merely a "workable, reasonable" alternative to the admission of evidence under the Rules of Evidence that advanced the State's interest in keeping intoxicated drivers off the road. *Id.* at 591, 691 P.2d at 681. The court therefore held that if Deason met the foundational requirements for the admission of the intoxilyzer results under the Rules of Evidence, the results should be admitted, even if he could not show that the statutory requirements for admission had been satisfied. *Id.*

¶ 16 The court's ruling in *Seidel* was based on its determination that the statute at issue was not the exclusive method by which intoxilyzer results could be admitted at trial and therefore did not supplant the Rules of Evidence. In this case, however, the statute is exclusive in medical malpractice cases and prevents a witness who may otherwise be qualified to testify under Rule 702 from testifying if he or she does not meet the statutory requirements. We therefore cannot read the statute as an alternative or supplement to Rule 702 and we find *Seidel* distinguishable.

¶ 17 Dr. Siebel cites numerous other cases in which the court found no conflict between the challenged statutes and the pertinent judicial rules. For example, in *Gilfillan*, the court ruled that because the procedural aspects of Arizona's Rape Shield Law, governing the admission and exclusion of evidence in sexual assault cases, mirrored the common law and were not inconsistent with other rules of evidence, the statute did not violate the separation of powers doctrine. 196 Ariz. at 404, ¶¶ 27–28, 998 P.2d at 1077. Similarly, in *Readenour v. Marion Power Shovel*, 149 Ariz. 442, 444–46, 719 P.2d 1058, 1060–62 (1986), the court construed a statute forbidding the admission of evidence of post-sale changes in the design or manufacture of a product in product liability actions to be consistent with Rule 407, which permits some uses of such evidence. *Id.* at 444–45, 719 P.2d at 1060–61.[4]

4. *See also State ex rel. Woods v. Filler*, 169 Ariz. 224, 227–28, 818 P.2d 209, 212–13 (App.1991) (holding that a statute that permitted hearsay testimony to establish probable cause was consistent with the purpose of the hearsay exceptions in Rules of Evidence 803 and 804); *State v.*

*Leonard*, 151 Ariz. 1, 5, 725 P.2d 493, 497 (App. 1986) (holding statute regarding the admissibility of blood alcohol test results did not conflict with the rules of evidence or engulf a general rule of admissibility); *United States v. Superior Court*, 144 Ariz. 265, 278, 697 P.2d 658, 671 (1985)

¶ 18 We find those authorities distinguishable because they involve situations where the statute and rule could be harmonized to co-exist. In general, the cases in Arizona demonstrate three ways in which statutes and rules can be harmonized to co-exist: (1) the policies behind the rule and statute are complimentary, (2) the statute does not interfere with admission of highly relevant evidence, and (3) the statute has a substantive component. None of these approaches is applicable here.

¶ 19 The criteria in the statute do not, as Dr. Siebel suggests, simply define the type of knowledge, skill, experience, training, and education appropriate for an expert to possess in a medical malpractice case. The statute focuses on the witness' specific specialty and activities at a particular time, rather than whether he or she possesses specialized knowledge that will assist the trier of fact. Whether a witness was engaged in active clinical practice or instruction in the defendant's area of practice in the year immediately preceding the event giving rise to the claim is not determinative as to whether the witness is qualified, as of the date of trial, to assist the jury by virtue of his or her knowledge, skill, experience, training or education. The statutory criteria might be relevant to the credibility or the weight to be given to testimony, but not its admissibility. *Cf. McGuire v. DeFrancesco*, 168 Ariz. 88, 92, 811 P.2d 340, 344 (App.1990) (holding expert who had no first-hand experience with obstetrical delivery in Arizona could nevertheless testify as to the minimum standard of care applicable in every state, including Arizona; "The lack of first-hand experience may affect the weight to be given the expert's testimony, but does not altogether preclude its admissibility."); *Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 287, ¶ 12, 9 P.3d 314, 318 (2000) ("The credibility of a witness' testimony and the weight it should be given are issues particularly within the province of the jury."). We therefore hold § 12–2604(A) is unconstitutional as an infringement on the exclusive rule-making authority of the Arizona Supreme Court because the statute cannot be harmonized with the Rule.

¶ 20 This does not, however, end our analysis. Because the legislature has the power to enact statutes that establish substantive rights, we consider whether § 12–2604(A) may be regarded as a substantive, rather than procedural, statute. *State v. Fowler*, 156 Ariz. 408, 410–11, 752 P.2d 497, 499–500 (App.1987). The parties agree that the applicable portions of § 12–2604 are procedural and the issue was not raised in the trial court. Nevertheless, because our review is de novo and we may affirm the trial court's ruling on alternative grounds, we choose to address this issue. *See Ariz. Libertarian Party v. Schmeral*, 200 Ariz. 486, 490, ¶ 13, 28 P.3d 948, 952 (App.2001) (appellate court must construe a statute to give it a reasonable and constitutional meaning, if possible). As we have previously stated,

> the substantive law is that part of the law which creates, defines and regulates rights; whereas the adjective, remedial or procedural law is that which prescribes the method of enforcing the right or obtaining redress for its invasion. It is often said the adjective law pertains to and prescribes the practice, method, procedure or legal machinery by which the substantive law is enforced or made effective.

*Fowler*, 156 Ariz. at 411–12, 752 P.2d at 500–01 (quoting *State v. Birmingham*, 96 Ariz. 109, 110, 392 P.2d 775, 776 (1964)). Examples of substantive statutes are those granting the right to appeal, imposing a burden of proof, and establishing evidentiary privileges. *See id.* at 412, 752 P.2d at 501 (right to appeal); *Gilfillan*, 196 Ariz. at 404, ¶ 27, 998 P.2d at 1077 (burden of proof); *Readenour*, 149 Ariz. at 446, 719 P.2d at 1062 (evidentiary privileges). Further, as we have acknowl-

(holding that statutory provisions governing the appointment of a master, application of the rules of evidence, and the effect of prior judgments in water rights cases were supplementary provisions that did not "unreasonably limit or hamper" the judiciary's performance of its duties); *Church v. Rawson Drug & Sundry Co.*, 173 Ariz.

342, 352–53, 842 P.2d 1355, 1365–66 (App.1992) (holding that statute abolishing joint and several liability did not impinge on the court's rule-making power because all testimony and exhibits were still required to be admitted according to court rules).

170

edged, "when it is appropriate we may defer to legislative decisions regarding the use or exclusion of relevant evidence to promote substantive goals of public policy. . . ." *Readenour*, 149 Ariz. at 446, 719 P.2d at 1062.

¶ 21 In this case, the legislative history of the enactment of § 12–2604(A) does not establish that the Arizona Legislature had concerns regarding the right to sue, limiting the right to sue or changing the burden of proof to prevail in medical malpractice cases. *See Gaynor v. OB/GYN Specialists, Ltd.*, 51 F.Supp.2d 718, 723–25 (W.D.Va.1999) (finding the provisions of the Virginia Code regarding the qualification of expert witnesses to be procedural because such provisions "are more logically regarded as affecting the method of obtaining redress and not the creation of duties, rights, and obligations"). The legislature's major focus in the expert witness portion of § 12–2604(A) was on the method of proving claims through expert witnesses, with a view to reducing meritless claims. *See* Medical Malpractice; Procedural Reforms: Hearing on S.B. 1036 Before H. Comm. on Health, H.R. 47th Leg., 1st Sess. (March 23, 2005 minutes of meeting). We therefore determine that § 12–2604(A) does not establish any new rights or reflect considerations creating, defining or regulating the right to bring a medical malpractice case, but merely prescribes the method by which existing rights may be enforced—changing the qualifications necessary to testify as an expert in a medical malpractice claim.

## CONCLUSION

¶ 22 For the foregoing reasons, we hold that § 12–2604(A) violates the separation of powers provision of the Arizona Constitution. We reverse the trial court's judgment and remand this matter for further proceedings consistent with this decision.

CONCURRING: SHELDON H. WEISBERG, and PATRICIA K. NORRIS, Judges.

