ECKERSTROM, Judge,*
concurring in part and concurring in the result.
¶ 45 I agree fully with the majority’s conclusions, set forth in part II of the foregoing opinion: (1) that the Arizona Constitution commands that the legislative, executive, and judicial branches shall be “separate and distinct” and that no branch “shall exercise the powers properly belonging to either of the others,” Ariz. Const, art. 3; (2) that the Arizona Constitution has expressly endowed the judiciary with the power to promulgate “rules relative to all procedural matters in any court,” id. art. 6, § 5(5); (3) that judicial rule-making power generally includes the power to promulgate rules of evidence; and (4) that the statute at issue here, A.R.S. § 12-2604(A), conflicts with Arizona Rule of Evidence 702. I write separately because, in this case, I cannot harmonize those premises with the majority’s ultimate holding that § 12-2604(A) is constitutional.
¶ 46 As Judge Irvine aptly observes in the court of appeals opinion, “the separation of powers doctrine does not require absolute compartmentalization of the branches.” Seisinger v. Siebel, 219 Ariz. 163, ¶ 7, 195 P.3d 200, 202 (App.2008). And, as the majority’s scholarly opinion here chronicles, our constitution tolerates each department’s incursion into the other’s presumptive domain *97 only so long as that incursion does not conflict with, “or ‘tend[ ] to engulf,’ ” the power of the constitutionally sanctioned branch. State ex reí. Napolitano v. Brown, 194 Ariz. 340, ¶ 6, 982 P.2d 815, 817 (1999) (quoting State v. Robinson, 153 Ariz. 191, 197, 735 P.2d 801, 807 (1987)). But when our legislature does enact a statute that conflicts with a procedural rule promulgated by this Court, we must determine which branch possesses the primary power, as set forth in the Arizona Constitution, to address the topic at issue. State v. Hansen, 215 Ariz. 287, ¶ 9, 160 P.3d 166, 168 (2007).
¶ 47 The Arizona Constitution endows the judicial department with primary authority to create rules governing the standards for the admissibility of evidence in an Arizona state courtroom — at least when, as here, those rules pursue goals at the core of the judicial function. As the majority acknowledges, Article 6, Section 5(5) of the Arizona Constitution expressly vests this Court with the “[p]ower to make rules relative to all procedural matters in any court.” And, this Court has repeatedly observed that, because the Arizona Rules of Evidence are generally procedural in nature, this Court’s authority to promulgate such rules ordinarily falls within the power granted by that article. See, e.g., Barsema v. Susong, 156 Ariz. 309, 314, 751 P.2d 969, 974 (1988); State v. Robinson, 153 Ariz. 191, 197, 735 P.2d 801, 807 (1987); Readenour v. Marion Power Shovel, 149 Ariz. 442, 444-45, 719 P.2d 1058, 1060-61 (1986); State ex rel. Collins v. Seidel, 142 Ariz. 587, 590, 691 P.2d 678, 681 (1984).[9]
¶ 48 But the authority of the judicial department over most rules of evidence does not derive exclusively from its express authority to promulgate procedural rules pursuant to Article 6, Section 5(5), but also from the basic content of the “judicial power” given to this department by our constitution in Article 6, Section 1. See Burney v. Lee, 59 Ariz. 360, 363-64, 129 P.2d 308, 309-10 (1942) (identifying rule-making authority as “essentially judicial” in nature and inherent in court’s Article 6, Section 1 power). When addressing the constitutionality of a statute conflicting with Arizona Rule of Evidence 802, this Court has observed that the judiciary’s constitutional power to promulgate hearsay rales derives both from “the reach of [the Court’s] rulemaking authority” and the function of those rules to pursue goals central to the judicial role. See Robinson, 153 Ariz. at 197, 735 P.2d at 807. In that case, Justice Feldman explained:
[T]he hearsay rales are at the core of the judicial function: defining what is reliable evidence and establishing judicial processes to test reliability. Under basic separation of powers principles, these judicial functions are separate and different from legislative powers. As Professor Wigmore long ago explained, “the judicial power involves the application of the law to concrete facts and, therefore, the investigation and establishment of the facts. Any statute which prevents the judicial body from ascertaining the [true] facts [in the case before it] ... is ineffective.”
Id. (alterations in original) (citation omitted). In so reasoning, the court also observed that the enhancement of “the truth-finding process” and rules designed to assure the reliability of evidence presented stand at “the heart of the judicial process.” Id.
¶ 49 Under the specific evidentiary rule at issue here, Rule 702, expert testimony is admissible any time it “will assist the trier of fact to understand the evidence or to determine a fact in issue,” but only on condition that the witness is “qualified as an expert by knowledge, skill, experience, training, or education.” In this way, Rule 702 both facilitates a party’s ability to establish facts relevant to the proceedings and installs a threshold mechanism for ensuring that such testimony is reliable.
*98 ¶ 50 The Court’s intention to pursue those twin goals in promulgating Rule 702 is also evident in its prefatory note to the section of the rules relating to expert witness testimony:
The rules in this article are designed to avoid unnecessary restrictions concerning the admissibility of opinion evidence; however, as this note makes clear, an adverse attorney may, by timely objection, invoke the court’s power to require that before admission of an opinion there be a showing of the traditional evidentiary prerequisites. Generally, it is not intended that evidence which would have been inadmissible under pre-existing law should now become admissible.
Ariz. R. Evid. art. 7 note. Thus, in promulgating Rule 702, this Court has sought to pursue goals that are central to the judicial function — to create threshold standards for the reliability of the testimony provided and assure an impartial and rational process for each party to establish facts in a courtroom. See also Ariz. R. Evid. 102 (identifying purpose of Arizona Rules of Evidence as fair and efficient “development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined”).[10] In so doing, the Court has exercised the judicial powers expressly conferred on this department by both Sections 1 and 5(5) of Article 6 of the Arizona Constitution.
¶ 51 For this reason, I must part ways with the majority’s analytical approach and ultimate conclusion. If Rule 702 is indeed an exercise of constitutionally endowed judicial power, as authorized by both general and specific provisions of the Arizona Constitution found in Article 6, it follows that a statute addressing the same subject must constitute an improper exercise of legislative authority to the extent the statute conflicts with the rule. Put more succinctly, if the power to determine the threshold for admissibility of expert testimony, as set forth in Rule 702, properly belongs to the judicial department, it cannot simultaneously belong to the legislature. See Ariz. Const. art. 3 (dividing powers of government into legislative, executive, and judicial departments and requiring “such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others”).
¶ 52 The majority does not directly dispute this fact, see ¶¶ 8-9, supra, but nonetheless performs a supplementary analysis of whether the requirements set forth in § 12-2604(A) may be characterized as “substantive or procedural.” See ¶ 24, supra. In light of the clear answers provided by the text of the Arizona Constitution when applied to Rule *99 702, I question the necessity of engaging in that further analysis.
¶ 53 As discussed, this Court has repeatedly addressed the constitutionality of statutes in purported conflict with specific provisions of the Arizona Rules of Evidence. In each of those cases, the Court has simply assumed, with brief reference to the authority provided in Article 6, Section 5(5), that the pertinent evidentiary rule fell squarely within the judicial domain and that the statute would be unconstitutional to the extent it conflicted with the rule. See Barsema, 156 Ariz. at 314, 751 P.2d at 974; Robinson, 153 Ariz. at 196-97, 735 P.2d at 806-07; Readenour, 149 Ariz. at 444-45, 719 P.2d at 1060-61; Seidel, 142 Ariz. at 590-91, 691 P.2d at 681-82. None of those cases engaged in a supplementary and dispositive analysis to confirm whether the statute’s content also could be characterized as procedural. Only in Read-enour did this Court even mention the substantive/procedural dichotomy — noting that the statute there had substantive and procedural features — and it did so only in the context of explaining why the statute harmonized rather than conflicted with the rule of evidence in question there. 149 Ariz. at 446, 719 P.2d at 1062.
¶ 54 Thus, in apparent recognition of the fact that a power cannot simultaneously belong to both branches, this Court has declined to apply the procedural/substantive analysis to a statute when such analysis is not necessary to resolve the separation of powers question before it. Rather, it has answered that question by determining whether the Court’s rule of evidence falls within its grant of exclusive constitutional authority and, if so, whether the statute conflicts with the rule.[11]
¶ 55 The wisdom of this approach is aptly demonstrated by the ease with which a statute setting forth an evidentiary rule may be characterized as both substantive and procedural — and the difficulty of determining which aspect controls. As the majority observes and as this Court has previously acknowledged, statutes relating to the admissibility of evidence “often have both substantive and procedural aspects.” See ¶ 29, supra. Presumably, then, we can only assess the fundamental nature of a statute on this continuum by first identifying its respective substantive and procedural features and then determining which of those features are most relevant to the criteria constitutionally provided for resolving separation of powers problems.
¶ 56 Although the majority opinion cogently highlights what it characterizes as the substantive aspects of § 12-2604(A), see ¶ 39, supra, it fails to identify or analyze the manifest procedural features of that statute. To the extent our jurisprudence has provided a yardstick for distinguishing between substantive and procedural law, it has observed that substantive law “creates, defines and regulates rights,” while procedural law “prescribes the method of enforcing the right or obtaining redress for its invasion.” State v. Birmingham, 96 Ariz. 109, 110, 392 P.2d 775, 776 (1964). Under that definition, procedural law “pertains to ... the practice, method, procedure or legal machinery by which the substantive law is enforced or made effective.” Id.
¶57 The majority declines to assess the procedural features of § 12-2604(A) under the Birmingham test. But, in my view, such an exercise provides considerable clarity in assessing the essential nature of the statute. As a threshold matter, § 12-2604(A) prescribes an evidentiary rule relating to “an action alleging medical malpractice.” And there is no dispute that the elements of that cause of action, because they define the right to seek redress, are substantive law. But § 12-2604(A) does not create the right to sue when the elements of that cause of action are *100 met, nor does it specify what those essential elements are: Those are set forth in part in A.R.S. § 12-563. Rather, § 12-2604(A) itemizes the qualifications an expert witness must possess to present testimony on the standard of care element found in § 12-563(1).
¶ 58 Thus, while § 12-563 sets forth substantive law by specifying uthat must be proven, § 12-2604(A) prescribes the method by which litigants must prove their entitlement to relief under that substantive law. Under the traditional test articulated in Birmingham, laws that provide “the method” for asserting a specific substantive right are procedural in nature.[12] 96 Ariz. at 110, 392 P.2d at 776.
¶ 59 The procedural aspect of § 12-2604(A) is highlighted not only by our traditional approach to characterizing a statute, but also by the function it performs in the context of our evidentiary law. Neither the majority opinion nor any of the litigants dispute that Rule 702 is procedural or that its promulgation falls for that reason within the express delegation of authority to the judiciary found in Article 6, Section 5(5). To the extent the provisions of § 12-2604(A) conflict with Rule 702, as the majority opinion correctly concludes they do, those features of the statute must necessarily be procedural. And, regardless of whether one ultimately concludes that the rule and statute conflict, both specify preconditions for the presentation of expert testimony in a court of law. Because both perform essentially the same function, it makes little sense to characterize one provision as procedural and the other as substantive.[13]
¶ 60 At a minimum, then, the procedural features of § 12-2604(A) are prominent. At the same time, the arguments for characterizing the statute as substantive law are, in my estimation, less persuasive. In essence, the majority posits that elevated standards for the admission of expert testimony in medical malpractice cases effectively establish an element of the cause of action, “by specifying the kind of proof necessary to meet the plaintiffs burden of production.” See ¶ 38, supra. But there are few, if any, rules of evidence that do not similarly qualify the method by which claimants must meet their burdens of production. Indeed, this is the function of those rules. For example, the hearsay rules play this role in every case— rendering a certain type of information unavailable to claimants to support the elements of their claim. Indeed, if the Court were to apply this analytical approach in every case addressing a conflict between a statute and a rule of evidence, the statute must always prevail — and the legislature, not the judicial department, would possess hegemony over all evidentiary rules. Because such a shift of power stands in direct conflict to the grant of authority to the judicial department found in the text of the Arizona Constitution, I fear the majority’s approach is incorrect and risks shifting the established boundaries of judicial and legislative domains.
¶ 61 Although the majority’s characterization of § 12-2604(A) as a constructive element of a medical malpractice cause of action proves too much, I believe its second argument in support of characterizing the statute as substantive, proves too little. The majori *101 ty observes correctly that this Court has addressed standards for the admissibility of testimony on the standard of care in medical malpractice cases, both before and after it promulgated Rule 702. See ¶¶ 33-37, supra. And our jurisprudence, like § 12-2604(A), has set threshold evidentiary standards for the admissibility of such expert testimony higher than those required by Rule 702. See ¶¶ 33-37, supra. The majority then suggests that, because that jurisprudence has evolved apart from the Arizona Rules of Evidence, it is presumptively substantive law, subject to legislative override. See id.
¶ 62 However, as discussed, our constitutional text expressly empowers the judicial department to “make rules relative to all procedural matters.” Ariz. Const. art. 6, § 5(5). But it does not specify the method by which those rules may be generated, developed, or promulgated. Indeed, as the majority opinion acknowledges, this Court did not codify any rules of evidence until 1977. See ¶ 35, supra. Thus, rules of procedure do not become substantive law merely because they have been articulated, explained, qualified, or amplified in case law rather than in the text of a codified set of rules. Otherwise, this Court would risk abdicating its express constitutional rule-making authority every time it construes a question of evidentiary, civil, juvenile, or criminal procedure in a decision, a result our constitution simply does not contemplate.
¶ 63 In sum, the power to promulgate Rule 702 falls squarely within the power allotted the judiciary by the general and specific terms of Article 6 of the Arizona Constitution. Because § 12-2604(A) conflicts with it, I would find that statute to be an unconstitutional encroachment by the legislature on the powers of this branch.
¶ 64 In so concluding, I am cognizant that the judiciary must foster comity between the respective branches and that, in possessing the trust and responsibility to resolve disputes among the branches including our own, we must be careful not to develop self-serving and self-empowering approaches in analyzing such questions. But we must also enforce the provisions of our constitution that expressly grant the judiciary the primary authority over those procedural rules that-serve core judicial functions. Because I fear the majority analysis fashions a wholly new framework for addressing separation of powers conflicts between statutes and evidentia-ry rules, and, in so doing, shifts to the legislature power that constitutionally belongs to this department, I can concur only in the result.

 Chief Justice Ruth V. McGregor has recused herself from this case. Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Peter J. Eckerstrom, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

. As the majority correctly observes, judge-made substantive law does not prevail over conflicting legislation merely because this Court has characterized that law as a rule of evidence. Specific rules of evidence that fall outside the domain of plenary judicial power, as articulated by the Arizona Constitution, are subordinate to conflicting legislation on the same topic. See Valerie M. v. Ariz. Dep't of Econ. Sec., 219 Ariz. 331, ¶ 21, 198 P.3d 1203, 1208 (2009). In the above-referenced cases, however, this Court has repeatedly acknowledged that most rules of evidence are fairly characterized as procedural rather than substantive.

. Arizona courts have yet to elaborate on what pursuits, if any, might be characterized as core functions of the judiciary beyond providing an efficient, reliable, and impartial truth-finding process. But, to properly carry out the intent expressed by our constitutional text in granting exclusively to this department "[t]he judicial power,” Ariz. Const, art. 6, § 1, any such analysis would need to be securely tethered to traditional notions of that power as reflected in conventional understandings of institutional competence and judicial domain. The majority may well be correct that articulating the precise boundaries of the power bestowed by Article 6, Section i will be difficult and may provide no greater analytical clarity than the substantive/procedural framework suggested by the language of Article 6, Section 5(5). But we cannot avoid considering the language of Article 6, Section 1 merely because enforcing that language might be analytically complex. And we do no service to the legislative branch by overlooking that language. Indeed, not all provisions of our rules of evidence would necessarily advance a core judicial function and be protected from incursion by the legislature. For example, traditional notions of the judicial power would not support characterizing Arizona Rule of Evidence 407 as an exercise of this Court’s plenary authority. This is not because, as the majority suggests, the promulgation of Rule 407 “reflects a substantive policy decision.” See n. 5, supra. All rules of evidence, even patently procedural ones, reflect some form of policy decision — most often related, as evidenced by the stated purpose of the rules, to providing an efficient, reliable, and impartial truth-finding process. Rather, Rule 407 falls outside of the primary domain of this department because it addresses a concern (regarding subsequent remedial measures) unrelated to core functions of the judiciary. Put another way, it is indisputably a core function of the judicial branch to create an impartial and efficient process for presenting reliable evidence in a courtroom. It is not a core judicial function to encourage property owners and manufacturers to remedy dangerous conditions.

. In recognizing the logic of this approach, I do not suggest that the separation of powers inquiry ends upon the discovery of "some conflict between a validly enacted rule of evidence and a statute.” See ¶ 29, supra. Rather, once an evi-dentiary rule has been determined to be an exercise of this Court’s plenary authority as set forth by the various provisions of Article 6 of the Arizona Constitution, then it follows that any conflicting provision in a statute is unconstitutional. As the majority correctly observes, a rule can be validly promulgated but subordinate to any conflicting legislation if its promulgation does not fall within the powers granted to the judicial branch in Article 6. See 1127, supra.

. The majority asks why the legislature may not "require a heightened level of proof of the standard of care," if the legislature maintains the power to set forth the burden of proof in the first instance. See ¶ 40, supra. But there remains an analytical distinction under the Birmingham test between a statute setting forth the quantum of proof necessary to support a cause of action and a statute specifying what potential witnesses may be used in doing so. Indeed, § 12-2604(A) does not so much purport to address the level of proof as the form that proof must take. For example, an experienced but recently retired physician with all of the same academic qualifications and practical experience as the defendant physician might well be able to provide a very high level of proof for the plaintiff on the question of the standard of care but would still be disqualified from doing so by § 12 — 2604(A)(2)(a) and (3)(a), which prohibit expert testimony if the witness no longer maintains “active clinical practice.”

. Although § 12-2604(A) addresses a particular element of a particular cause of action — while Rule 702 applies broadly to all causes of action— it makes little sense to conclude that the legislature may constitutionally do in small increments what it may not do in large ones. Certainly, no text in the Arizona Constitution suggests such a basis for distinguishing legislative and judicial domains.